EXHIBIT "C"

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-001

Original Note

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.



Loan Number ▮▮▮▮5110
MIN: ▮▮▮▮997162851102

# NOTE

| APRIL 14, 2021 | TRAVERSE CITY | , | MICHIGAN | |
|---|---|---|---|---|
| [Date] | [City] | | [State] | |

161( SPENCER RD SE, KALKASKA, MICHIGAN 49646-9666

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$302,929.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CALIBER HOME LOANS, INC..** I will make all payments under this Note in the form of cash, check or money order.

. understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **2.750%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1ST** day of each month beginning on **JUNE 1, 2021**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **MAY 1, 2051**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. BOX 650856, DALLAS, TX 75265-0856** or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$1,236.68**.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

MULTISTATE FIXED RATE NOTE—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01**    *Page 1 of 3*

    

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.00%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**MULTISTATE FIXED RATE NOTE**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01**    *Page 2 of 3*

Case No. 1:26-cv-468 | EX-001 | McALKICH–000003 | Packet 3 of 132

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

04/04/21 _____ (Seal)

Borrower - **ROBERT MCALKICH**

*[Sign Original Only]*

Loan Originator Organization: **CALIBER HOME LOANS, INC.**
NMLS ID: **15622**
Loan Originator: **TODD JARROLD**
NMLS ID: **30415**

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01    *Page 3 of 3*

 

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-002

Original Mortgage Security Instrument

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

*16*

DOCUMENT # 3156328     MTG          Pages: 16
Received: 04/19/2021 01:05   PM
Recorded: 04/19/2021 04:07 PM
State of Michigan - Kalkaska County
Jo Ann DeGraaf, Register of Deeds

# MORTGAGE

**Loan Number** ▮▮▮ **5110**
**MERS Number** ▮▮▮ **997162851102**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **APRIL 14, 2021**, together with all Riders to this document.

**(B) "Borrower"** is **ROBERT MCALKICH, AN UNMARRIED MAN;**. Borrower's address is **1610 SPENCER RD SE, KALKASKA, MICHIGAN 49646-9666**. Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the mortgagee under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is **CALIBER HOME LOANS, INC.**. Lender is a **CORPORATION** organized and existing under the laws of **DELAWARE**. Lender's address is **1525 S. BELT LINE ROAD, COPPELL, TX 75019.**

**(E) "Note"** means the promissory note signed by Borrower and dated **APRIL 14, 2021**. The Note states that Borrower owes Lender **THREE HUNDRED TWO THOUSAND NINE HUNDRED TWENTY-NINE AND 00/100THS** Dollars (U.S. $302,929.00)  plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 01, 2051.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ V.A. Rider | ☐ Manufactured Home Rider |

**MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     **Form 3023  1/01**  *(page 1 of 13 pages)*





*930*
*ATA* ␣M

☐ Leasehold Rider ☐ Revocable Trust Rider ☒ USDA Occupancy Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the __County__ [Type of Recording Jurisdiction] of __KALKASKA__ [Name of Recording Jurisdiction]:

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF**

which currently has the address of **1610 SPENCER RD SE**
_____
                                                                    [Street]
__KALKASKA_____, Michigan **49646-9666**_____ ("Property Address"):
            [City]                                       [Zip Code]

**MICHIGAN—**Single Family**--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3023  1/01  *(page 2 of 13 pages)*

  

Case No. 1:26-cv-468 | EX-002 | McALKICH--000007 | Packet 7 of 132

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3023  1/01   *(page 3 of 13 pages)*





excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

MICHIGAN--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3023  1/01  *(page 4 of 13 pages)*





**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods,  for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay,  in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3023  1/01   *(page 5 of 13 pages)*

  

proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect

MICHIGAN--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3023 1/01  *(page 6 of 13 pages)*

  

Case No. 1:26-cv-468 | EX-002 | McALKICH--000011 | Packet 11 of 132

Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3023 1/01   *(page 7 of 13 pages)*

  

takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3023 1/01  *(page 8 of 13 pages)*

 

in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address

**MICHIGAN**–Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3023  1/01   *(page 9 of 13 pages)*

  

under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A

MICHIGAN--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3023 1/01  *(page 10 of 13 pages)*





Case No. 1:26-cv-468 | EX-002 | McALKICH--000015 | Packet 15 of 132

sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to**

MICHIGAN--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3023 1/01 *(page 11 of 13 pages)*

  

Case No. 1:26-cv-468 | EX-002 | McALKICH--000016 | Packet 16 of 132

Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15.  Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law.  Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release.  Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

Witness -

Witness

$04/14/21$ (Seal)

Borrower -    **ROBERT MCALKICH**

MICHIGAN--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3023  1/01  *(page 12 of 13 pages)*

  

State of **MICHIGAN**
County of ~~GRAND TRAVERSE~~ *Lee lanav*

The foregoing instrument was acknowledged before me this *14* day of *April*, *2021* by **Robert Mcalkich**.

_____
Notary Public Signature

TERRENCE J. RAVEN II
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF GRAND TRAVERSE
My Commission Expires April 23, 2021
Acting in the County of *Lee lanav*

_____
Notary Printed Name

Notary public, State of MICHIGAN, County of _____

My Commission expires: _____

Acting in the County of _____

Notary's Stamp

[ ] This notarial act was performed using a remote electronic notarization platform.

Loan Originator Organization: **CALIBER HOME LOANS, INC.**
NMLS ID: **15622**
Loan Originator: **TODD JARROLD**
NMLS ID: **30415**

### Drafter's Certification

This Mortgage was drafted by **ANISSA NASBY**
**CALIBER HOME LOANS, INC.**, whose address is **1525 S. BELT LINE ROAD, COPPELL, TX 75019.**

After Recording Return To: **FIRST AMERICAN MORTGAGE SOLUTIONS ON BEHALF OF CALIBER HOME LOANS**
**1795 INTERNATIONAL WAY**
**IDAHO FALLS, ID 83402**

MICHIGAN--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3023  1/01  *(page 13 of 13 pages)*

  

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-004

USDA Rural Loan Occupancy Rider

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

# USDA RURAL LOAN OCCUPANCY RIDER

THIS USDA RURAL LOAN OCCUPANCY RIDER is made this **14TH** day of **APRIL, 2021**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to **CALIBER HOME LOANS, INC.** (the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:

**1610 SPENCER RD SE, KALKASKA, MICHIGAN 49646-9666**

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Section 6 of the Security Instrument is deleted and is replaced by the following:

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence until the payment of all sums secured by this Security Instrument, unless Lender otherwise agrees in writing.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this USDA Rural Loan Occupancy Rider.

Witness -
_____

Witness -
_____ (Seal)

Borrower - **ROBERT MCALKICH**

**MULTISTATE USDA RURAL LOAN OCCUPANCY RIDER** – Single Family                9/18 *(page 1 of 1 page)*

  

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-005

Shellpoint Welcome and Servicing Transfer Letter - November 8 2022

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

Shellpoint Mortgage Servicing
P.O. Box 619063
Dallas TX 75261-9063
DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS

November 8, 2022



5-811-23331-0007419-002-000-010-000-000

ROBERT MCALKICH
1610 SPENCER RD SE
KALKASKA MI  49646-9666

| CONTACT INFORMATION | |
|---|---|
| **Correspondence:** | P.O. Box 10826 Greenville, SC 29603 |
| **Business Hours:** | Monday - Friday 8:00AM-9:00PM Saturday 10:00AM-2:00PM |
| **Phone:** 866-317-2347 | |
| **Fax:** 866-467-1137 | |
| **Website:** www.shellpointmtg.com | |

Loan Number:      ▓▓▓▓5110
Property Address:  1610 SPENCER RD SE
                   KALKASKA MI 49646

Dear Homeowner(s):

**Shellpoint Mortgage Servicing ("Shellpoint")** welcomes you! We're pleased that the owner of your mortgage loan has entrusted us to service your account.

**The servicing of your mortgage is being transferred.** Effective November 2, 2022, the **servicing** of your mortgage loan (collecting payments, paying taxes and insurance, etc.) transfers from Caliber Home Loans, Inc. to Shellpoint.

**Making your payments.** Starting on November 2, 2022, make your mortgage payments payable to **Shellpoint Mortgage Servicing** at the address shown on the attached payment coupon. Your prior servicer, Caliber Home Loans, Inc., will stop accepting payments on November 2, 2022. Shellpoint will start accepting mortgage payments on November 2, 2022. **Please use the attached coupon to mail us a check for your first payment. Starting with your next payment, we will send you regular monthly statements that include payment coupons.**

**Other payment options.** Don't want to write monthly checks? Our other payment options include:
- **Free automatic withdrawal** from your bank account (also called "ACH").
- **Online** payments (via our website).
- **Pay by phone** (using either our automated phone system or by speaking with a live Customer Care representative).

**Manage your mortgage online.** To help you manage your mortgage account, we've created a set of easy-to-use online **tools**. Just use your computer, tablet, or phone to visit our website. If you haven't already done so, visit shellpointmortgageservicing.com and create an account with us. After you've set up your account, you can make payments, view and print statements, get answers to common questions, chat with a live representative, and more.

**Call us if you need to** at **866-317-2347**. Our **automated phone system** gives you 24-hour access to your account, so you can make payments, check payment status, get answers to common questions, and access a wide range of account information. If you need to speak with someone, our Customer Care Team is available Monday through Friday 8:00AM-9:00PM, and Saturday 10:00AM-2:00PM (Eastern time).

**Were you working on a loss mitigation plan?** If you were engaged in a loss mitigation plan or evaluation  with your previous servicer – or if you applied for such a plan -- please call us right away. Dial 866-825-2174 so we can make sure your plan information has been properly transferred to us.  If necessary, we will contact your previous servicer to obtain missing documents.

5-811-23331-0007419-002-000-010-000-000

¿Hablas español? Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número **866-317-2347**.

**Welcome to Shellpoint!**  We look forward to serving you, and we're committed to providing you with an excellent mortgage-servicing experience.

Sincerely,

*Customer Care Team*
**Shellpoint Mortgage Servicing**
P.O. Box 10826
Greenville, SC 29603
**866-317-2347**

---

Detach and return with payment.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



First payment due date: 01/01/2022
Monthly payment: $1,641.31

Loan ID: ████ 5110
ROBERT MCALKICH

Amount enclosed: $_____

**Enter the amount enclosed, and mail your payment check with this coupon to:**
Shellpoint Mortgage Servicing
P.O. Box 650840
Dallas, TX 75265-0840

5-811-23331-0007419-002-000-010-000-000

# Helping You Manage Your Mortgage

Please review the following important information regarding your loan payments. Our records indicate that your January 1, 2022 payment is due. As of the date of this letter, your principal balance is $296,453.67 and your escrow balance is -$1,626.69. You will receive a billing statement from Shellpoint each month. Effective November 2, 2022, please begin sending your mortgage payments to Shellpoint using one of the options listed below.



## Easy Ways to Pay

**FREE Automatic Withdrawal (ACH):** Sign up online at www.shellpointmtg.com. Our ACH options are:
- **Monthly** – choose your date (1st - 15th)
- **Bi-weekly** – draft half every other Monday

**Online:** You can make one-time payments using our website when you sign up at www.shellpointmtg.com.

**Mail:**
Shellpoint Mortgage Servicing
P.O. Box 650840
Dallas, TX 75265-0840

**Phone:** You can make payments over the phone through our automated system or by speaking with a Customer Care representative at **866-317-2347**.

## Loan Information

To help simplify the management of your mortgage, we have provided the following information:

| Terms of Your Mortgage | |
|---|---|
| Loan Number | ████ 5110 |
| Loan Origination Date | 04/14/2021 |
| Original Loan Amount | $302,929.00 |
| Current Interest Rate | 2.750% |
| Term | 360 months |
| Maturity Date | 05/01/2051 |

| Current Balances | |
|---|---|
| Principal Balance | $296,453.67 |
| Escrow Balance | -$1,626.69 |
| Fee Balance | $347.34 |

| Payment Details | |
|---|---|
| Due Date | 01/01/2022 |
| Principal and Interest | $1,236.68 |
| Escrow | $404.63 |
| Total Monthly Payment | $1,641.31 |

# FAQs

| | |
|---|---|
| **Will my previous servicer still accept my payments?** | The date that your previous servicer will stop accepting payments from you is November 2, 2022.  We will begin accepting payments from you on November 2, 2022. Please send all payments due on or after that date. |
| **What if I make a payment to my previous servicer?** | Your previous servicer will forward your payment to us and it will be applied towards the date due. |
| **How can I make payments to you?** | You can pay by check, online, with a Customer Care representative, through our automated IVR (phone system), by wire transfer, or by setting up a monthly or bi-weekly ACH. |
| **What if my payment is due during this transfer?** | Continue to make your payments during the first 60 days of transfer. During the first 60 days we will not treat your payments as late and will not apply late fees. |
| **Will the terms of my mortgage loan be affected by this servicing transfer?** | No. The terms of your mortgage are not affected by this transfer, other than those directly related to servicing your loan. |
| **What if I have more than one loan?** | This letter refers only to loan number ▮▮▮▮▮5110.  If more than one loan is transferring to Shellpoint, we will send you a Welcome Letter and information for each loan.  When making payments, please send the correct loan amounts separately, referencing each account. |

Except in limited circumstances, the law requires your present servicer to send notice at least 15 days before the effective date of transfer or at closing.  Your new servicer must also send you this notice no later than 15 days after the effective date or transfer date or at closing. The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage, other than the terms directly related to the servicing of your loan (e.g. payments and inquiries).

If you pay by check, you are authorizing Shellpoint Mortgage Servicing to use the check information to make a one-time electronic debit for each check presented, from the account at the financial institution designated on the check. This electronic debit will be for the exact amount indicated on the check.

By January 31 of each year, Shellpoint Mortgage Servicing provides an Annual Tax and Interest Statement for IRS reporting on the portion of the previous year that Shellpoint Mortgage Servicing serviced your loan. If your loan is currently escrowed for taxes and/or insurance, Shellpoint Mortgage Servicing is required by law to analyze your loan. Shellpoint Mortgage Servicing will notify you in writing if your payment amount changes.

Premiums for mortgage life, accidental death, or disability insurance will not be transferred from your previous servicer. To maintain those coverages, contact your insurance carrier or your local insurance agent. Contact your previous servicer if you are unsure of your carrier's name.

You should also be aware of the following information, which is explained in more detail in Section 6 and Section 12 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605, 12 CFR Sections 1024.35 and 1024.36):

RESPA Section 6 and Section 12 give you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within five (5) business days of receiving your request. A "qualified written request" is a written correspondence—other than writing on a payment coupon or other payment-related documents supplied by your servicer—that includes your name, account number, and reasons for the request. Send all qualified written requests to Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603; or you can call 866-317-2347.

5-811-23331-0007419-002-000-010-000-000

No later than thirty (30) days (not including weekends and legal public holidays) after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 30-day period, your servicer may not provide information to a credit-reporting agency concerning any overdue payment related to the 30-day time period or your qualified written request. However, the servicer may still begin foreclosure proceedings if proper grounds exist under the mortgage documents.

A "business day" is a day on which the offices of the business are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals if servicers are shown to have violated the requirements of that Section. Seek legal advice if you believe your rights have been violated.

If you have any questions for your previous servicer about your mortgage loan or this transfer, please contact their Customer Service department:

Caliber Home Loans, Inc.
P.O. Box 2487
Greenville, SC 29602
800-401-6587

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-012

Shellpoint Forbearance Plan Approval - January 26 2023

This placeholder/cover page is part of the final Bates-numbered exhibit packet.
The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.



P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED

**shellpoint**
A DIVISION OF NEW REZ



Կիկիկի|||||||•|•|•|ր|||||•||ηіμ|ь|•||•ηիη|||•|η||•|η||||

S-SFRECS20  L-2310  R-106
PHE99Y00200090 - 729215076 I00358
**ROBERT MCALKICH**
**1610 SPENCER RD SE**
**KALKASKA MI 49646-9666**

**Phone Number:** 866-825-2174
**Fax:** 866-467-1187
**Email:** Lossmitigation@shellpointmtg.com
**Mon - Thurs:** 8:00AM-9:00PM
**Fri:** 8:00AM-9:00PM
**Sat:** 8:00AM-1:00PM

| Loan Number: | █████5110 |
|---|---|
| Principal Balance: | $296,453.67 |
| Property: | 1610 SPENCER RD SE KALKASKA, MI 49646 |

01/26/2023

Dear Homeowner,

Thank you for contacting us about your mortgage. Based on a careful review of the information you provided to us, you have been approved for a Forbearance Plan. A Forbearance Plan is a temporary suspension of your mortgage payments intended to allow you the time and flexibility to manage the financial challenges affecting your ability to pay your mortgage.

**Forbearance Plan**

Your monthlymortgage payment amount of  $1,641.31 has been placed on a temporary forbearance  for a period of 3 months. That means that starting on 01/01/2023 and for the next 3 months **you will not be penalized with a late payment charge or with negative credit reporting if you miss a mortgage payment.**

However, if you can afford to make payments or even partial payments you are strongly urged to do so. Your payment continues to come due on a monthly basis and these payments will be due at the end of your temporary forbearance period.

If you have questions about the terms of this offer, please contact us at 866-825-2174.

**Additional Forbearance Plan Information and Legal Notices**

As a part of your approved Forbearance Plan, if you were set up for ACH automatic payment, we have suspended your ACH automatic draft for the duration of your Forbearance Plan. If you are set up on bi-weekly ACH automatic payments, the ACH will be cancelled and you will need to request the ACH to be set up again for future use.

The terms of your mortgage remain unchanged. As a result of not making any payments during the term of the Forbearance Plan, you will become delinquent on your mortgage and your credit score may be impacted after the forbearance is completed; if we are not able to resolve your delinquency.

If you recently received an incomplete loss mitigation application notice, do not ignore that notice. The Forbearance Plan may be set up based on an evaluation of an incomplete application.

Other loss mitigation options may be available to you, as you have the option to submit a complete loss mitigation application to receive an evaluation for all loss mitigation options available regardless of whether you accept this plan.

If your financial situation changes during the term of your Forbearance Plan, please contact us immediately to reassess your situation and discuss potential alternatives.

At least 30 days prior to the end of the Forbearance Plan, we will contact you for updated financial information and documentation of your financial circumstances. We also will provide information about alternatives that may be available to you at the end of the Forbearance Plan term.

**We will not proceed to foreclosure sale during this Forbearance Plan, provided you are complying with the terms of the Forbearance Plan.**

- Any pending foreclosure action or proceeding that has been suspended may be resumed if you fail to comply with the terms of the Forbearance Plan. However, in no event will we proceed to foreclosure sale if a foreclosure moratorium affecting your loan remains in place.

- This Forbearance Plan offer is contingent on you having provided accurate information.  We reserve the right to revoke this offer or terminate the plan following your acceptance if we learn of information that would make you ineligible for forbearance.

- You agree that, in the event you make any payments during the Forbearance Plan term, we may hold those payments in an account until sufficient funds are in the account to pay your oldest delinquent monthly payment. You also agree that we will not owe you interest on the amounts held in the account.  If any money is left in this account at the end of the Forbearance Plan and you qualify for a loan modification, those funds will be deducted from amounts that would otherwise be added to your modified principal balance.

**Your current loan documents remain in effect; however, you are not required to make any payment during the term of the Forbearance Plan.**

- You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the Forbearance Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

Sincerely,

Christopher Ogden
866-825-2174
Loss Mitigation Department
Shellpoint Mortgage Servicing

**Please read the following important notices as they may affect your rights.**

Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

**Attention Servicemembers and Dependents:**  The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service.  Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us. Additionally, if you believe we have furnished inaccurate information to credit reporting agencies, please write to us with specific details regarding those errors and any supporting documentation that you have and we will assist you. Error Resolution, including concerns of inaccurate information sent to credit reporting agencies, or requests for information should be sent to the following address:  Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 866-825-2174 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 866-825-2174 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您要使用英语以外的其他语言进行交流，请致电** 866-825-2174，**我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as Newrez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-029

State Auto Policy Excerpts - March 26 2022 to March 26 2023

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.



**STATE AUTO**
Insurance Companies

*Michigan's Best Insurance Agency*
*3390 Epps Lane*
*Traverse City, MI 49686*

## Renewal Declaration
Homeowners Policy

*Issue Date: 02/10/2022*

## Total Policy Premium
### $2,325.48

**Named Insured**

**ROBERT MCALKICH**
1610 SPENCER RD SE
KALKASKA, MI 49646

| Policy Number | Policy Period | Coverage is provided by the following State Auto Company |
|---|---|---|
| 1001110558 | 03/26/22 - 03/26/23 | State Auto Property and Casualty Insurance Company |

*The Premises covered by this policy is located at the address below. Policy Period begins 12:01 am standard time at the residence premises.*

**Insured Location:**

1610 SPENCER RD SE
KALKASKA, MI 49646-9666



**StateAuto.com**

**Questions?**

Visit us at **StateAuto.com** or call **(800) 288-4425** customer service.

**Contact your independent agent at (231) 929-9500.**

## Your Coverages

| Section I Property Coverage | Limit | Premium |
|---|---|---|
| A. Dwelling | $321,700 | $2,107.97 |
| B. Other Structures | $32,170 | Included |
| C. Personal Property | $160,850 | Included |
| D. Loss of Use | $96,510 | Included |
| **Section II Liability Coverages** | **Limit** | **Premium** |
| E. Personal Liability | $300,000 | Included |
| F. Medical Payments | $1,000 | Included |

*Coverage at the above described location is provided only where a limit of liability or a premium is stated.*

*Your section I coverages have been verified and adjusted as needed based on your homes estimated replacement cost value.*

## Additional Coverages

| Coverages | Limit | Premium |
|---|---|---|
| Personal Property Replacement Cost Settlement | | $217.51 |
| | **Total Premium** | **$2,325.48** |

*This premium will be billed to and paid by the mortgagee.*

## Your Deductibles

| Deductibles | Amount |
|---|---|
| All-Peril | $1,000 |
| Windstorm or Hail | $1,000 |

Policy Number: 1001110558

**IL N 001 09 03**

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Policy Number: 1001110558

II. **Section I – Property Coverages**

The property provisions of your policy have been revised to reinforce that, in general, there is no coverage under your policy for:

- Loss to other structures from which any home-sharing host activities are conducted;
- Loss to personal property of home-sharing occupants;
- Loss to personal property of any other person occupying the residence premises as a result of any home-sharing host activities;
- Loss to personal property in a space while rented or primarily held for rental to a home-sharing occupant;
- Loss to personal property used primarily for home-sharing host activities;
- Loss of fair rental value arising out of or in connection with home-sharing host activities; and
- Loss to any property due to theft, vandalism or malicious mischief resulting from home-sharing host activities.

III. **Section II – Liability Coverages**

The liability provisions of your policy have been revised to reinforce that, in general, there is no liability coverage for:

- Engaging in the business of renting or holding for rental of an insured location, in whole or in part, for home-sharing host activities; and
- Personal injury arising out of home-sharing host activities.

Policy Number: 1001110558

HOMEOWNERS
HO P 004 05 11

# LIMITED HOME DAY CARE COVERAGE
# ADVISORY NOTICE TO POLICYHOLDERS

**CAUTION:** This is a summary of the limited coverage provided in your Homeowners Policy for Home Day Care services. No coverage is provided by this summary nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverage you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF YOUR POLICY SHALL PREVAIL. PLEASE READ YOUR POLICY CAREFULLY.**

A. "Business", as defined in the policy, means:

  1. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

  2. Any other activity engaged in for money or other compensation, except the following:

    a. One or more activities:

      (1) Not described in **b.** through **d.** below; and

      (2) For which no insured receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    b. Volunteer activities for which no money is received, other than payment for expenses incurred to perform the activity;

    c. Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    d. The rendering of home day care services to a relative of an insured.

B. If you or any other insured regularly provides home day care services to a person or persons other than you or any other insureds as their trade, profession or occupation, that service is a "business".

C. If home day care service is not your or any other insured's given trade, profession or occupation but is an activity:

  1. That you or any other insured engages in for money or other compensation; and

  2. From which you or any other insured receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

D. With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

  1. Described in **A.2.** above; and

  2. Engaged in for money by you or any other insured;

may be considered a "business" if the $2,000 threshold is exceeded.

E. With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

  1. Does not provide:

    a. Section II coverages. This is because your "business" or the "business" of any other insured is excluded under Section II – Exclusions;

    b. Coverage, under Section I, for other structures from which any "business" is conducted; and

Policy Number: 1001110558

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

### D. Coverage D – Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

#### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

#### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

#### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

#### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

### E. Additional Coverages

#### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's trees felled by a Peril Insured Against under Coverage **C**;

provided the trees:

(3) Damage a covered structure; or

(4) Do not damage a covered structure, but:

(a) Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

Policy Number: 1001110558

**(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section I – Conditions.

### 3. Trees, Shrubs And Other Plants

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

### 4. Fire Department Service Charge

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

### 5. Property Removed

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

### 6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

Policy Number: 1001110558

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

(1) Use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household;

(b) By a person who has been entrusted with either type of card or access device; or

(c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2) Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

## 7. Loss Assessment

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **Q.** Policy Period under Section I – Conditions does not apply to this coverage.

This coverage is additional insurance.

## 8. Collapse

**a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

**b.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage – Collapse does not apply to:

(1) A building or any part of a building that is in danger of falling down or caving in;

(2) A part of a building that is standing, even if it has separated from another part of the building; or

(3) A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage **C**;

(2) Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

Policy Number: 1001110558

### H. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

### I. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

### J. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

### K. Abandonment Of Property

We need not accept any property abandoned by an "insured".

### L. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section I – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

### M. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

### N. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

### O. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

### P. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

### Q. Policy Period

This policy applies only to loss which occurs during the policy period.

Policy Number: 1001110558

**(2)** Owned by an "insured" provided the "occurrence" takes place:

**(a)** On an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.;** or

**(b)** Off an "insured location" and the "motor vehicle" is:

**(i)** Designed as a toy vehicle for use by children under seven years of age;

**(ii)** Powered by one or more batteries; and

**(iii)** Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

**(1)** Less than 26 feet in overall length; or

**(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 25 total horsepower or less;

**(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

**(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(i)** You declare them at policy inception; or

**(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This policy does not cover "hovercraft liability".

Policy Number: 1001110558

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

1. **Expected Or Intended Injury**

   "Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity or property than initially expected or intended.

   However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion **E.2.** does not apply to:

   (1) The rental or holding for rental of an "insured location";

      (a) On an occasional basis if used only as a residence;

      (b) In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      (c) In part, as an office, school, studio or private garage; and

   (2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

3. **Professional Services**

   "Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

4. **"Insured's" Premises Not An "Insured Location"**

   "Bodily injury" or "property damage" arising out of a premises:

   a. Owned by an "insured";

   b. Rented to an "insured"; or

   c. Rented to others by an "insured";

   that is not an "insured location";

5. **War**

   "Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

   a. Undeclared war, civil war, insurrection, rebellion or revolution;

   b. Warlike act by a military force or military personnel; or

   c. Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. **Communicable Disease**

   "Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

   "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. **Controlled Substance**

   "Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-035

State Auto Coverage Determination and Misdelivery Evidence - July 18
2023

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

RPA-19169_20231101_4


**STATE AUTO**
Insurance Companies

ROBERT MCALKICH
1610 SPENCER RD SE
KALKASKA, MI 49646

STATE AUTO INSURANCE

NOV 01 2023

P-#6

RPA-19169_20231101_4


**STATE AUTO**
Insurance Companies

July 18, 2023

**SENT VIA REGULAR AND CERTIFIED MAIL RETURN RECEIPT REQUESTED
AND ELECTRONIC MAIL: robertmcalkich@icloud.com**

Robert Mcalkich
1610 Spencer Rd. SE
Kalkaska, MI 49646

| | |
|---|---|
| **Insured:** | Robert Mcalkich ("you," "your") |
| **Policy:** | 1001110558 ("State Auto Policy") |
| **Company:** | State Auto Property and Casualty Insurance Company ("State Auto," "we," "us," "our") |
| **Loss Location:** | 1610 Spencer Rd. SE, Kalkaska, MI 49646 |
| **Date of Loss:** | 1-16-23 |
| **Claim Number:** | PR-0000000-467718 ("Claim") |

<u>**CLAIM DENIAL**</u>

Dear Mr. Mcalkich:

As you are aware, the above Claim was submitted by you under the above referenced Policy to State Auto for the fire loss that occurred at 1610 Spencer Rd. SE, Kalkaska, MI 49646 on or about January 16, 2023.

Due to questions about the cause of the fire, the extent of loss and damage and our potential liability and defenses to the claim, State Auto immediately began its investigation requesting your cooperation and sent you a Reservation of Rights and Request for Documents letter on January 31, 2023 outlining policy provision which may apply to limit or exclude coverage for the loss.

On March 9, 2023, State Auto sent you a letter because you had not cooperated and produced previously requested records and information. In that letter, we reiterated our request that you perform your obligations outlined in Section I-Conditions, C. Duties After Loss, including submission of the requested records and information, as well as submitting your signed, Sworn Statement in Proof of Loss. Blank Sworn Statement in Proof of Loss forms were provided to you with our letter as required by the policy of insurance and you were advised the Sworn Statement in Proof of Loss had to be received by us within 60 days of March 9, 2023.

On April 24, 2023, you emailed State Auto and requested an extension of the Sworn Statement in Proof of Loss deadline. Due to the reported undisclosed "health issues" in your March 13, 2023 email, State Auto agreed to extend the Sworn Statement in Proof of Loss deadline through May 31, 2023 and confirmed the extension and new deadline in our letter of May 3, 2023.

The communications identified above were all sent to you by email, regular mail and certified mail, receipt return requested. Based upon your April 24, 2023 email request, it is clear that you had received our earlier requests for your cooperation and performance of your contractual obligations.

RPA-19169_20231101_4

Robert Mcalkich
July 18, 2023
Page 2

To date, State Auto has not received the requested documents, information or Sworn Statement in Proof of Loss despite extending the deadline for submission to May 31, 2023. Accordingly, you are in material breach of your insurance contract. State Auto hereby denies liability under the policy of insurance for your claimed losses and damages because of your material breach of the following Policy conditions:

SECTION I – CONDITIONS

* * *

C.    Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

* * *

5.    Cooperate with us in the investigation of a claim;

6.    Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7.    As often as we reasonably require:

   a.    Show the damaged property;

   b.    Provide us with records and documents we request and permit us to make copies; and

   c.    Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8.    Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a.    The time and cause of loss;

   b.    The interests of all "insureds" and all others in the property involved and all liens on the property;

   c.    Other insurance which may cover the loss;

   d.    Changes in title or occupancy of the property during the term of the policy;

   e.    Specifications of damaged buildings and detailed repair estimates

RPA-19169_20231101_4

Robert Mcalkich
July 18, 2023
Page 3

    f.        The inventory of damaged personal property described in 6. above;

    g.        Receipts for additional living expenses incurred and records that support the fair rental value....

You are also in breach of the Policy provision precluding legal action against State Auto unless and until the terms of the following condition are met:

    SECTION I — CONDITIONS

    Paragraph H. Suit Against Us is replaced by the following:

    H.    Suit Against Us

        No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss. The time for commencing an action is tolled from the time the "insured" notifies the insurer of the loss until the insurer formally denies liability.

As you have not complied with all of the terms under Section I of your State Auto Policy, you are precluded from bringing legal action against State Auto.

Please note that your breach of the contract of insurance has prevented State Auto from completing its investigation into the facts and circumstances of the loss, your Claim and our potential liability and defenses. You have not provided information and documentation which is in your possession or subject to your control. Accordingly, State Auto is not in a position at this time to identify or assert other potential defenses to the claim and reserves all of our rights and defenses without limitation or estoppel. Neither this letter nor any act, past or future, by any representative of State Auto should be construed to waive any of the terms, requirements, and conditions of your Policy, nor should our actions be construed as a waiver of any right, claim or potential defense thereunder.

Sincerely,
Julie Ross
**Julie Ross**
**CARE Specialist**
**Property General Adjuster**
State Auto Insurance Companies
Phone: 313-806-1007 | julie.ross@StateAuto.com

cc:    Michigan's Best Insurance Agency, 3390 Epps Lane, Traverse City, MI 49686



RPA-19169_20231101_4

**USPS TRACKING #**

9590 9402 8317 3094 5520 81

**United States
Postal Service**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

· STATE AUTO INSURANCE COMPANIES
518 EAST BROAD STREET

RPA-19169_20231101_4

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ROBERT MCALKICH
1610 SPENCER RD SE
KALKASKA, MI 49646

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)　C. Date of Delivery

D. Is delivery address different from item 1?　☐ Yes
If YES, enter delivery address below:　☐ No

RPA-19169_20231101_4



**STATE AUTO**
Insurance Companies

618 EAST BROAD STREET
COLUMBUS, OHIO 43215-3978



7022 2410 0000 1021 3238





US POSTAGE PITNEY BOWES

ZIP 43215  $ 008.53
02 4W
0000376079 JUL 19 2023

UNCLAIMED 10/

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-036

State Auto and Sterling Claim Communications Excerpts

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

From: Senn, Becky <Becky.Senn@libertymutual.com>

Sent: Wednesday, October 1, 2025 10:06:06 AM

To: Robert McAlkich III <███ch9716285110@gmail.com>; robertmcalkich@icloud.com <Robertmcalkich@icloud.com>; arenzi@sterlingclaimsmanagement.com <arenzi@sterlingclaimsmanagement.com>

Cc: claims@sterlingclaimsmanagement.com <claims@sterlingclaimsmanagement.com>

Subject: Re: Contact for claim #PR-0000000-467718


Mr. McAlkich.

We have received the three emails you sent on September 27, 2025.

Please be advised once again, we have forwarded everything to you we can.

There was no adjuster's report.

Therefore, we have no other documentation to send.

Regards,

Becky



Becky Senn, AIC

Large Loss Team Manager

Small Commercial Property Claims

---

Liberty Mutual / State Auto Insurance

PO Box 182822, Columbus, OH 43218-2822

E | becky.senn@libertymutual.com

P| 615.925.9867

FL License #W244824



Log in here to access your claim information whenever you need it

 



*If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify me via return email and via telephone at 931-374-6884 and permanently delete the original and any copy of any email, attachment, and any printout thereof. Thank you.*

---

From: Robert McAlkich III <███ch9716285110@gmail.com>

Please govern yourselves accordingly. I reserve all rights and defenses with respect to this matter.

Respectfully,

Robert M. McAlkich III

Get Outlook for iOS

**From:** Senn, Becky <Becky.Senn@libertymutual.com>

**Sent:** Tuesday, April 2, 2024 4:47:23 PM

**To:** robertmcalkich@icloud.com <robertmcalkich@icloud.com>; arenzi@sterlingclaimsmanagement.com <arenzi@sterlingclaimsmanagement.com>; robertmcalkich@icloud.com <robertmcalkich@icloud.com>

**Cc:** claims@sterlingclaimsmanagement.com <claims@sterlingclaimsmanagement.com>

**Subject:** RE: Contact for claim #PR-0000000-467718

Hello Mr. McAlkich,

I sent this email to you on the 15th

I then received a notification from customer service that you contacted them again.

Can you please confirm you have received this email?

Thanks

Becky

Becky Senn, AIC

Large Loss Team Manager

Liberty Mutual / State Auto Insurance

PO Box 182822, Columbus, OH 43218-2822

E | becky.senn@libertymutual.com

*Log in here* to access your claim information whenever you need it

 



*If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify me via return email and via telephone at 931-374-6884 and permanently delete the original and any copy of any email, attachment, and any printout thereof. Thank you.*

**From:** Senn, Becky
**Sent:** Friday, March 15, 2024 10:55 AM
**To:** robertmcalkich@icloud.com; arenzi@sterlingclaimsmanagement.com
**Cc:** claims@sterlingclaimsmanagement.com
**Subject:** Contact for claim #PR-0000000-467718

Hello Mr. McAlkich,

We received a message from you about payment to the mortgage company.

Please see the attached copy of the cashed check #1001366503 that was cleared on 8/23/23.

I have added your representative, Andrea Renzi of Sterling Claims Management for her records as well.

If you have any further questions, please let me know.

Case No. 1:26-cv-468 | EX-036 | McALKICH—0<sup>.</sup>0003 | Packet 53 of 132

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-037

State Auto Check Deposit Info

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

3/15/24, 11:03 AM                                          imageWindow

## View Image: Image On-Demand                                          ✕

**ITEM DETAILS**          **IMAGE FRONT**          🔍 🔍 ↻ ↺ ⟳ ◑ 👁 🖨 📄

**ACCOUNT NUMBER**

**4130176483**

**ACCOUNT NAME**

**STATE AUTOMOBILE MUTUAL INSURA**

**POST DATE**

**08/23/2023**

**CCY**

**USD**

**AMOUNT**

**304,640.05**

**TRANSACTION TYPE**

**Checks/Debits**

**SEQ / REF #**

**18792591**

**SERIAL #**

**1001366503**



**IMAGE BACK**          🔍 🔍 ↻ ↺ ⟳ ◑ 👁 🖨 📄

002817381

PAY TO THE ORDER OF CITIBANK ECD
FOR DEPOSIT ONLY A/C 31354717
LOCKBOX 81854
NEW CASTLE, DELAWARE <051100209>

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-040

Shellpoint Payoff Quote - July 11 2023

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.


**A DIVISION OF newrez**

MONDAY - FRIDAY:    8AM - 9PM ET
SATURDAY:    10AM - 2PM ET

PHONE NUMBER:    (800) 365-7107
FAX NUMBER:    (866) 467-1187
E-MAIL: LOANSERVICING@SHELLPOINTMTG.COM

July 11, 2023

MCALKICH, ROBERT
1610 SPENCER RD SE

KALKASKA, MI  49646

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: ███5110
ROBERT MCALKICH
1610 SPENCER RD SE
KALKASKA. MI    49646
Loan Type: USDA    FHA/VA Case #: 26040378023217

When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address.  Funds received in this office after 3:00 pm Eastern Time will be processed on the next business day, with interest charged to that date.

This payoff quote is effective  8/11/2023  and is good through  8/11/2023 . Any transactions that occur on or after the effective date may change the payoff amount.

| Projected Payoff Date | 8/11/2023 |
|---|---|
| Principal Balance | $296,453.67 |
| Interest To 8/11/2023 | $13,810.76 |
| Fees | $432.34 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $4,678.86 |
| Funds owed to borrower | ($841.30) |

| Total Payoff | $314,534.33 |
|---|---|
| Per diem | $22.34 |

The next payment due date is 1/1/2022. Payments are made by Billing on a Monthly basis. The interest rate for this payment is 2.75000% and the P & I payment is 1,236.68.  The taxes are next due 9/14/2023.
**PLEASE CALL THE NUMBER LISTED ON THIS FORM TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

Mailing Address
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

PO1 rpt - Internal
7/11/2023                30

PLTF_DISC_000229



MONDAY - FRIDAY:    8AM - 9PM ET
SATURDAY:    10AM - 2PM ET

PHONE NUMBER:    (800) 365-7107
FAX NUMBER:    (866) 467-1187
E-MAIL: LOANSERVICING@SHELLPOINTMTG.COM

Payoff Policy Details:

1.  When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address .
2.  We only accept funds on business days, which are Monday through Friday . Any funds received will be posted with the date received .
3.  Continue making your monthly payments until you send us the amount needed to pay off your mortgage to avoid late charges or adverse credit reporting .
    a.  If you currently have your monthly payment set up on automatic withdrawal (ACH), or have any pending payments set up, drafting will continue until the loan is paid in full, at which time future drafts will automatically be cancelled .
4.  **If you are due for a refund, that refund will be issued by check on day 20 after the date the loan is paid in full .**
    a.  Any refunds will be sent to the mailing address we have on record for this account . If your mailing address is changing, you must contact us to provide a new address .
5.  The payoff total quoted above is valid through the stated good through date . Any transactions that occur on or after the issue date of this payoff statement may change the total payoff amount .
6.  The payoff amount is subject to our final verification once we receive the payoff funds . We reserve the right, except where prohibited, to correct any portion of this statement at any time .
7.  **If the amount we receive is insufficient to pay off this loan, we may use funds in the escrow balance to cover the short payoff .**
    a.  **If the escrow balance is insufficient to pay off the total amount owed, we will attempt to contact you or the issuing agent. If we are unable reach you or the issuing agent, we will return the payoff funds and you will need to request a new quote .**
8.  We will pay all escrowed items, including hazard and flood insurance and taxes, from your escrow account as normally scheduled up to the date we receive the payoff funds .
    a.  You or your closing agent (if applicable) will need to request a refund from the appropriate tax authority or insurance company for any duplicate tax or insurance payments .
    b.  Any existing lender-placed property insurance premium will be cancelled upon account payoff, and any related unearned premiums will be refunded .
9.  Once the loan is paid in full, the appropriate security instrument will be released as follows :
    a.  Real Property: a Release is recorded with your county and a copy will be sent to you once returned from the county, usually within 30-90 days, dependent upon state/county processing times .
    b.  Personal Property: a Tile Lien Cancellation or UCC3 Termination will be sent to the mailing address we have on record for this account within 30-90 days .

PLTF_DISC_000230



# shellpoint
A DIVISION OF **newrez**

MONDAY - FRIDAY:    8AM - 9PM ET
SATURDAY:    10AM - 2PM ET

PHONE NUMBER:    (800) 365-7107
FAX NUMBER:    (866) 467-1187
E-MAIL: LOANSERVICING@SHELLPOINTMTG.COM

Wiring Instructions - * **You must include the "Reference" information listed below if wiring funds** *

Bank Name:    CITI Bank
ABA Number:    021000089
Account Number:    31354717
Account Name:    Shellpoint Mortgage Servicing
Reference:    ██████5110 /

**"BEWARE OF SCAMS - WE WILL NEVER ASK YOU TO USE DIFFERENT WIRING INSTRUCTIONS - IF YOU RECEIVE ANY REQUEST TO USE INSTRUCTIONS DIFFERENT THAN THESE PLEASE CALL THE TELEPHONE NUMBER LISTED AT THE TOP THIS FORM TO CONFIRM NEXT STEPS ."**

**ROBERT MCALKICH  -  Loan ID #██████5110**

## FEE DETAILS

| Description | Amount |
| --- | --- |
| Late Charge Payment | $292.34 |
| NSF Fee Payment | $100.00 |
| Property Inspection | $40.00 |
| | **$432.34** |

## FUNDS OWED BY BORROWER DETAILS

| Description | Amount |
| --- | --- |
| Escrow Only Payment | $4,121.97 |
| Mortgage Insurance | $342.12 |
| Lender Placed Hazard Due | $214.77 |
| | **$4,678.86** |

PO1 rpt - Internal
7/11/2023                30

PLTF_DISC_000231

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-041

Shellpoint Payoff Quote - September 14 2023

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

# shellpoint
#### A DIVISION OF newrez

MONDAY - FRIDAY    8AM - 9PM ET
SATURDAY    10AM - 2PM ET

PHONE NUMBER:    (800) 365-7107
FAX NUMBER.    (866) 467-1187
E-MAIL. LOANSERVICING-a SHELLPOINTMTG.COM

September 14, 2023

MCALKICH, ROBERT
1610 SPENCER RD SE

KALKASKA, MI  49646

Payoff figures have been requested on the loan for the borrower and property described below

Loan ID:  ███████5110
ROBERT MCALKICH
1610 SPENCER RD SE
KALKASKA, MI  49646
Loan Type. USDA   FHA/VA Case #. 26040378023217

When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address. Funds received in this office after 3:00 pm Eastern Time will be processed on the next business day, with interest charged to that date

This payoff quote is effective 9/30/2023 and is good through 9/30/2023 Any transactions that occur on or after the effective date may change the payoff amount

| Projected Payoff Date | 9/30/2023 |
|---|---|
| Principal Balance | $296,453 67 |
| Interest To 9/30/2023 | $14,914 50 |
| Fees | $1,865 13 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $7,269 43 |
| Funds owed to borrower | ($841 30) |

| Total Payoff | $319,661.43 |
|---|---|
| Per diem | $22 34 |

The next payment due date is 1/1/2022. Payments are made by Billing on a Monthly basis  The interest rate for this payment is 2 75000% and the P & I payment is 1,236 68   The taxes are next due 12/31/2023.

**PLEASE CALL THE NUMBER LISTED ON THIS FORM TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

Mailing Address
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

PO1 :pt - Mail
9/14/2023          30

PLTF_DISC_000232



MONDAY - FRIDAY    8AM - 9PM ET
SATURDAY    10AM - 2PM ET

PHONE NUMBER:    (800) 365-7107
FAX NUMBER    (866) 467-1187
E-MAIL  LOANSERVICING@SHELLPOINTMTG.COM

Payoff Policy Details

1   When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address

2   We only accept funds on business days, which are Monday through Friday   Any funds received will be posted with the date received

3.   Continue making your monthly payments until you send us the amount needed to pay off your mortgage to avoid late charges or adverse credit reporting
      a   If you currently have your monthly payment set up on automatic withdrawal (ACH)  or have any pending payments set up, drafting will continue until the loan is paid in full, at which time future drafts will automatically be cancelled

4.   **If you are due for a refund,** that refund will be issued by check on day 20 after the date the loan is paid in full .
      a.   Any refunds will be sent to the mailing address we have on record for this account   If your mailing address is changing, you must contact us to provide a new address .

5.   The payoff total quoted above is valid through the stated good through date   Any transactions that occur on or after the issue date of this payoff statement may change the total payoff amount

6   The payoff amount is subject to our final verification once we receive the payoff funds   We reserve the right except where prohibited, to correct any portion of this statement at any time

7.   **If the amount we receive is insufficient to pay off this loan, we may use funds in the escrow balance to cover the short payoff .**
      **a.   If the escrow balance is insufficient to pay off the total amount owed, we will attempt to contact you or the issuing agent. If we are unable reach you or the issuing agent, we will return the payoff funds and you will need to request a new quote .**

8   We will pay all escrowed items, including hazard and flood insurance and taxes, from your escrow account as normally scheduled up to the date we receive the payoff funds
      a.   You or your closing agent (if applicable) will need to request a refund from the appropriate tax authority or insurance company for any duplicate tax or insurance payments .
      b.   Any existing lender-placed property insurance premium will be cancelled upon account payoff, and any related unearned premiums will be refunded

9   Once the loan is paid in full, the appropriate security instrument will be released as follows
      a   Real Property  a Release is recorded with your county and a copy will be sent to you once returned from the county, usually within 30-90 days, dependent upon state/county processing times
      b.   Personal Property  a Tile Lien Cancellation or UCC3 Termination will be sent to the mailing address we have on record for this account within 30-90 days

PO1 rpt  Mad
3/14/2023        3C

PLTF_DISC_000233



**shellpoint**
A DIVISION OF **newrez**

MONDAY - FRIDAY    8AM - 9PM ET
SATURDAY    10AM - 2PM ET

PHONE NUMBER:    (800) 365-7107
FAX NUMBER:    (866) 467-1187
E-MAIL. LOANSERVICING.@SHELLPOINTMTG.COM

Wiring Instructions - * You must include the "Reference" information listed below if wiring funds *

| | |
|---|---|
| Bank Name: | CITI Bank |
| ABA Number: | 021000089 |
| Account Number: | 31354717 |
| Account Name: | Shellpoint Mortgage Servicing |
| Reference: | ████5110 / |

"BEWARE OF SCAMS - WE WILL NEVER ASK YOU TO USE DIFFERENT WIRING INSTRUCTIONS
- IF YOU RECEIVE ANY REQUEST TO USE INSTRUCTIONS DIFFERENT THAN THESE PLEASE
CALL THE TELEPHONE NUMBER LISTED AT THE TOP THIS FORM TO CONFIRM NEXT STEPS ."

ROBERT MCALKICH - Loan ID #9716285110

## FEE DETAILS

| Description | Amount |
|---|---|
| FC Costs | $720.29 |
| Appraisal | $600.00 |
| Attorney Cost | $37.50 |
| Property Inspection | $100.00 |
| NSF Fee Payment | $100.00 |
| Late Charge Payment | $307.34 |
| | **$1,865.13** |

## FUNDS OWED BY BORROWER DETAILS

| Description | Amount |
|---|---|
| Lender Placed Hazard Due | $214.77 |
| Mortgage Insurance | $427.65 |
| Escrow Only Payment | $6.627.01 |
| | **$7,269.43** |

PO1 rpt - Mail
9/14/2023    $0

PLTF_DISC_000234

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-042

Shellpoint Complete Account Summary - December 23 2024

This placeholder/cover page is part of the final Bates-numbered exhibit packet.
The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

Loanhist.rpt

12/23/2024 6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #1

**Loan ID** 5110

**Borrower Name** ROBERT MCALKICH

| Trans Date / Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/24/24 | 01/01/22 | Post-Liq Proceeds Waiv | 0 | 0 | 1,801.65 | | 0.00 | | | | | 0.00 | $0.00 | None |
| 05/31/24 | 01/01/22 | Escrow Refund | 0 | 0 | (1,801.65) | | 0.00 | | (1,801.65) | | | 0.00 | $0.00 | Wire |
| Wire Ref.#:20832 | | | | | Payee: Investor Batch ID:1368971 Collateral ID:0 | | | | | | | | | |
| 04/30/24 04/25/24 | 01/01/22 | Lender Placed Hazard F | 0 | 0 | 1,801.65 | | 0.00 | | 1,801.65 | 1,801.65 | | 0.00 | $0.00 | Wire |
| | | | | | Batch ID:1347492 | | | | | | | | | |
| 04/24/24 04/01/24 | 01/01/22 | Skip Trace Disb | 0 | 0 | (0.02) | | 0.00 | | | | | 0.00 | $0.00 | ACH |
| ACH Ref.#:195092 | | | | | Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT Batch IDI 343225 Collateral ID:0 | | | | | | | | | |
| Invoice Number. 1316097-202404H | | | | | | | | | | | | | | |
| 03/06/24 02/27/24 | 01/01/22 | FC Costs - NR Disb | 0 | 0 | (57.50) | | 0.00 | | | | | 0.00 | $0.00 | ACH |
| ACH Ref.#:187550 | | | | | Payee: TROTT LAW, P.C. Batch ID:1305727 Collateral ID:0 | | | | | | | | | |
| Invoice Number: 513383F0204 | | | | | | | | | | | | | | |
| 03/06/24 02/27/24 | 01/01/22 | FC Costs Disb | 0 | 0 | (37.50) | | 0.00 | | | | | 0.00 | $0.00 | ACH |
| ACH Ref.#:187550 | | | | | Payee: TROTT LAW, P.C. Batch ID:1305727 Collateral ID:0 | | | | | | | | | |
| Invoice Number: 513383F0204 | | | | | | | | | | | | | | |
| 03/06/24 02/27/24 | 01/01/22 | Sheriff Cost Disb | 0 | 0 | (50.00) | | 0.00 | | | | | 0.00 | $0.00 | ACH |
| ACH Ref.#:187550 | | | | | Payee: TROTT LAW, P.C. Batch ID:1305727 Collateral ID:0 | | | | | | | | | |
| Invoice Number: 513383F0204 | | | | | | | | | | | | | | |
| 03/01/24 02/19/24 | 01/01/22 | Auctioneer Cost Disb | 0 | 0 | (1,275.05) | | 0.00 | | | | | 0.00 | $0.00 | ACH |
| ACH Ref.#:186943 | | | | | Payee: SERVICELINK AUCTION, LLC Batch ID:1302190 Collateral ID:0 | | | | | | | | | |
| Invoice Number: I-039552 | | | | | | | | | | | | | | |
| 02/23/24 | 01/01/22 | Liquidation Proceeds Pr | 0 | 0 | 4,414.71 | | 0.00 | | | | | 0.00 | $0.00 | Check |
| | | | | | Batch ID:1296780 | | | | | | | | | |
| 02/23/24 | 01/01/22 | Unapplied Payment | 0 | 0 | (841.30) | | 0.00 | | | | | 0.00 | $0.00 | Check |
| | | | | | Batch ID:1296780 | | | | | | | | | |
| 02/23/24 | 01/01/22 | Loss Draft Payment | 0 | 0 | (304,640.05) | | 0.00 | | | | | 0.00 | $841.30 | Check |
| | | | | | Batch ID:1296780 | | | | | | | | | |

1:26-cv-468

BATES-000230

1:26-cv-468

EX-042

PLTF DISC 000235
RMIII000230

Loanhist.rpt

12/23/2024  6:51:14PM

**Shellpoint Mortgage Servicing**
**Loan History Summary**

Page #2

| Loan ID | Borrower Name |
|---|---|
| ▇▇▇5110 | ROBERT MCALKICH |

| Trans Date Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/23/24 | 01/01/22 | FC Costs Pmt | 0 | 0 | 1,441.76 Batch ID:1296780 | | 0.00 | | | | | 0.00 | $841.30 | Check |
| 02/23/24 | 01/01/22 | Appraisal Pmt | 0 | 0 | 1,125.00 Batch ID:1296780 | | 0.00 | | | | | 0.00 | $841.30 | Check |
| 02/23/24 | 01/01/22 | Attorney Cost Pmt | 0 | 0 | 37.50 Batch ID:1296780 | | 0.00 | | | | | 0.00 | $841.30 | Check |
| 02/23/24 | 01/01/22 | Property Inspection Pmt | 0 | 0 | 180.00 Batch ID:1296780 | | 0.00 | | | | | 0.00 | $841.30 | Check |
| 02/23/24 | 01/01/22 | Escrow Only Payment | 0 | 0 | 9,173.71 Batch ID:1296780 | | 0.00 | | 9,173.71 | | | 0.00 | $841.30 | Check |
| 02/23/24 | 01/01/22 | Foreclosure (Cash) | 0 | 0 | 314,608.67 Batch ID:1296780 | 296,453.67 | 0.00 | 18,155.00 | | (9,173.71) | | 0.00 | $841.30 | Check |
| 02/23/24 | 01/01/22 | NSF Fee Waiver | 0 | 0 | 100.00 | | 296,453.67 | | | (9,173.71) | 100.00 | 0.00 | $841.30 | None |
| 02/23/24 | 01/01/22 | Late Charge Waive | 0 | 0 | 257.87 | | 296,453.67 | | | (9,173.71) | 257.87 | 0.00 | $841.30 | None |
| 02/23/24 | 05/01/24 | USDA Rural Housing D ACH Ref.# 185805 | 0 | 0 | (835.30) Payee: USDA  Batch ID 1296372  Collateral ID 0 | | 296,453.67 | | (835.30) | (9,173.71) | | 257.87 | $841.30 | None |
| 02/21/24 02/16/24 | 01/01/22 | FC Costs - NR Disb ACH Ref.# 185546 Invoice Number: 513383F0203 | 0 | 0 | (190.00) Payee: TROTT LAW, P.C.  Batch ID:1294080  Collateral ID 0 | | 296,453.67 | | | (8,338.41) | | 257.87 | $841.30 | ACH |
| 02/20/24 02/08/24 | 01/01/22 | Property Inspection Dist ACH Ref.# 185229 Invoice Number: T0031087982 | 0 | 0 | (20.00) Payee: GUARDIAN ASSET MANAGEMENT  Batch ID:1293000  Collateral ID:0 | | 296,453.67 | | | (8,338.41) | | 257.87 | $841.30 | ACH |
| 02/15/24 02/13/24 | 01/01/22 | Insurance Cost Disb ACH Ref.#:184983 Invoice Number: 10442 | 0 | 0 | (150.00) Payee: PROCTOR FINANCIAL  Batch ID:1290961  Collateral ID 0 | | 296,453.67 | | | (8,338.41) | | 257.87 | $841.30 | ACH |

**1:26-cv-468**

BATES-000231

RMIII000231

Loanhist.rpt

12/23/2024  6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #3

**Loan ID**    **Borrower Name**
5110    ROBERT MCALKICH

| Trans Date Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/09/24 02/07/24 | 01/01/22 | Title Cost Disb | 0 | 0 | (75.00) | | 296,453.67 | | | (8,338.41) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 184089 | | | Payee: AVENUE 365 LENDER SERVICES LLC  Batch ID:1286821  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 24405880TU | | | | | | | | | | | | |
| 02/08/24 | 01/26/24 | Lender Placed Hazard I | 0 | 0 | (214.77) | | 296,453.67 | | (214.77) | (8,338.41) | | 257.87 | $841.30 | None |
| | | ACH Ref.#:183822 | | | Payee: Proctor Financial  Batch ID:1285707  Collateral ID:0 | | | | | | | | | |
| 02/02/24 01/25/24 | 01/01/22 | FC Costs Disb | 0 | 0 | (59.47) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 183183 | | | Payee: TROTT LAW, P.C.  Batch ID:1281045  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 513383F0202 | | | | | | | | | | | | |
| 02/02/24 01/25/24 | 01/01/22 | FC Costs Disb | 0 | 0 | (662.00) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 183183 | | | Payee: TROTT LAW, P.C.  Batch ID:1281045  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 513383F0202 | | | | | | | | | | | | |
| 01/28/24 10/30/23 | 01/01/22 | Client Auth Expense Dis | 0 | 0 | (0.09) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 182251 | | | Payee: TRANS UNION LLC  Batch ID:1276128  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 22552706-0 | | | | | | | | | | | | |
| 01/26/24 07/29/23 | 01/01/22 | Client Auth Expense Dis | 0 | 0 | (0.09) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 182247 | | | Payee: TRANS UNION LLC  Batch ID:1275783  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 19826126-0 | | | | | | | | | | | | |
| 01/24/24 12/31/23 | 01/01/22 | AVM Advance Disb | 0 | 0 | (1.63) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 181666 | | | Payee: ASSETVAL  Batch ID:1272810  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 1130-05283 | | | | | | | | | | | | |
| 01/22/24 12/31/23 | 01/01/22 | Skip Trace Disb | 0 | 0 | (0.02) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 181200 | | | Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT  Batch ID1270530  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 1316097-202312F | | | | | | | | | | | | |
| 01/17/24 01/10/24 | 01/01/22 | FC Costs - NR Disb | 0 | 0 | (665.00) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 180653 | | | Payee: TROTT LAW, P.C.  Batch ID:1267412  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 513383F0201 | | | | | | | | | | | | |

**1:26-cv-468**

**BATES-000232**

1:26-cv-468                    EX-042                    PLTF DISC 000232
RMIII000232

Loanhist.rpt
12/23/2024  6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #4

**Loan ID**  5110
**Borrower Name**  ROBERT MCALKICH

| Trans Date Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Balance | Interest Amount | Escrow Amount | Balance | Late Charge Amount | Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/17/24 01/10/24 | 01/01/22 | FC Costs - NR Disb | 0 | 0 | (570.00) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 180653 | | | Payee: TROTT LAW, P.C.  Batch ID:1267412  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number  513383F0201 | | | | | | | | | | | | |
| 01/17/24 01/10/24 | 01/01/22 | FC Costs - NR Disb | 0 | 0 | (190.00) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 180653 | | | Payee: TROTT LAW, P.C.  Batch ID:1267412  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number  513383F0201 | | | | | | | | | | | | |
| 01/17/24 01/10/24 | 01/01/22 | FC Costs - NR Disb | 0 | 0 | (190.00) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.# 180653 | | | Payee: TROTT LAW, P.C.  Batch ID:1267412  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number  513383F0201 | | | | | | | | | | | | |
| 01/16/24 01/12/24 | 01/01/22 | Appraisal Disb | 0 | 0 | (525.00) | | 296,453.67 | | | (8,123.64) | | 257.87 | $841.30 | ACH |
| | | ACH Ref.#180376 | | | Payee: eStreet Appraisal Management LLC  Batch ID:1266443  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number  23029244 | | | | | | | | | | | | |
| 01/09/24 | 12/26/23 | Lender Placed Hazard C | 0 | 0 | (214.77) | | 296,453.67 | | (214.77) | (8,123.64) | | 257.87 | $841.30 | None |
| | | ACH Ref.# 179528 | | | Payee: Proctor Financial  Batch ID:1262211  Collateral ID:0 | | | | | | | | | |
| 01/02/24 | 01/01/22 | Late Charge Waive | 0 | 0 | 49.47 | | 296,453.67 | | | (7,908.87) | 49.47 | 257.87 | $841.30 | None |
| 12/27/23 11/01/23 | 01/01/22 | Skip Trace Disb | 0 | 0 | (0.02) | | 296,453.67 | | | (7,908.87) | | 307.34 | $841.30 | ACH |
| | | ACH Ref.#:177554 | | | Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT  Batch ID:1253813  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number  1316097-202311G | | | | | | | | | | | | |
| 12/19/23 12/18/23 | 01/01/22 | Title Cost Disb | 0 | 0 | (75.00) | | 296,453.67 | | | (7,908.87) | | 307.34 | $841.30 | ACH |
| | | ACH Ref.#:176401 | | | Payee: AVENUE 365 LENDER SERVICES LLC  Batch ID:1249639  Collateral ID:0 | | | | | | | | | |
| | | Invoice Number  23395023TU | | | | | | | | | | | | |
| 12/14/23 | 12/31/23 | Town Tax Bill 2 | 0 | 0 | (643.45) | | 296,453.67 | | (643.45) | (7,908.87) | | 307.34 | $841.30 | None |
| | | ACH Ref.#:175614 | | | Payee: ORANGE TOWNSHIP  Batch ID 1245271  Collateral ID:0 | | | | | | | | | |
| 12/12/23 | 11/26/23 | Lender Placed Hazard C | 0 | 0 | (211.82) | | 296,453.67 | | (211.82) | (7,265.42) | | 307.34 | $841.30 | None |
| | | ACH Ref.# 175086 | | | Payee: Proctor Financial  Batch ID:1244501  Collateral ID:0 | | | | | | | | | |

**1:26-cv-468**

**BATES-000233**

1:26-cv-468                                        EX-042                                        RMIII000233

Loanhist.rpt

12/23/2024  6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #5

**Loan ID**  **Borrower Name**
5110  **ROBERT MCALKICH**

| Trans Date / Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/08/23 12/01/23 | 01/01/22 | Property Inspection Dist ACH Ref.#174764 Invoice Number T0030606330 | 0 | 0 | (20.00) | | 296,453.67 | | | (7,053.60) | | 307.34 | $841.30 | ACH |
| 11/25/23 10/01/23 | 01/01/22 | Skip Trace Disb ACH Ref.#172924 Invoice Number 1316097-202310C | 0 | 0 | (0.02) | | 296,453.67 | | | (7,053.60) | | 307.34 | $841.30 | ACH |
| | | Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT Batch ID 232450 Collateral ID 0 | | | | | | | | | | | | |
| 11/24/23 09/01/23 | 01/01/22 | Skip Trace Disb ACH Ref.#172918 Invoice Number 1316097-202309H | 0 | 0 | (0.02) | | 296,453.67 | | | (7,053.60) | | 307.34 | $841.30 | ACH |
| | | Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT Batch ID 232223 Collateral ID 0 | | | | | | | | | | | | |
| 11/21/23 | 10/26/22 | Lender Placed Hazard I ACH Ref.#172394 | 0 | 0 | (214.77) | | 296,453.67 | (214.77) | | (7,053.60) | | 307.34 | $841.30 | None |
| | | Payee: Proctor Financial Batch ID:1229906 Collateral ID 0 | | | | | | | | | | | | |
| 11/14/23 11/04/23 | 01/01/22 | Property Inspection Dist ACH Ref.#171400 Invoice Number T0030371840 | 0 | 0 | (20.00) | | 296,453.67 | | | (6,838.83) | | 307.34 | $841.30 | ACH |
| | | Payee: GUARDIAN ASSET MANAGEMENT Batch ID:1224445 Collateral ID 0 | | | | | | | | | | | | |
| 10/31/23 09/30/23 | 01/01/22 | AVM Advance Disb ACH Ref.#169347 Invoice Number 1126-4383 | 0 | 0 | (1.63) | | 296,453.67 | | | (6,838.83) | | 307.34 | $841.30 | ACH |
| | | Payee ASSETVAL Batch ID 1213535 Collateral ID 0 | | | | | | | | | | | | |
| 10/30/23 10/11/23 | 01/01/22 | Property Inspection Dist ACH Ref.#169222 Invoice Number T0030109523 | 0 | 0 | (20.00) | | 296,453.67 | | | (6,838.83) | | 307.34 | $841.30 | ACH |
| | | Payee: GUARDIAN ASSET MANAGEMENT Batch ID 1212605 Collateral ID 0 | | | | | | | | | | | | |
| 10/26/23 | 09/26/23 | Lender Placed Hazard I ACH Ref.#168770 | 0 | 0 | (211.82) | | 296,453.67 | (211.82) | | (6,838.83) | | 307.34 | $841.30 | None |
| | | Payee: Proctor Financial Batch ID:1210295 Collateral ID 0 | | | | | | | | | | | | |
| 10/25/23 | 01/01/22 | Certified Mail Cost Disb ACH Ref.#168767 Invoice Number INVLIV00716157 | 0 | 0 | (5.52) | | 296,453.67 | | | (6,627.01) | | 307.34 | $841.30 | ACH |
| | | Payee: SOURCEHOV Batch ID:1209617 Collateral ID 0 | | | | | | | | | | | | |

1:26-cv-468

BATES-000234

PLTF_DISC_000239
RMIII000234

1:26-cv-468                                                                EX-042

Loanhist.rpt

12/23/2024  6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #6

| Loan ID | Borrower Name |
|---|---|
| ████5110 | ROBERT MCALKICH |

| Trans Date Eff Date | Due Date | Trans Desc | Rev Code Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/29/23 08/01/23 | 01/01/22 | Certified Mail Cost Disb ACH Ref.# 164936 | 0 0 | (19.13) | | 296,453.67 | | | (6,627.01) | | 307.34 | $841.30 | ACH |
| | | Payee: FEDEX Batch ID 1190283 Collateral ID 0 | | | | | | | | | | | |
| | | Invoice Number: 821971843 | | | | | | | | | | | |
| 09/26/23 08/01/23 | 01/01/22 | Skip Trace Disb ACH Ref.# 163905 | 0 0 | (0.02) | | 296,453.67 | | | (6,627.01) | | 307.34 | $841.30 | ACH |
| | | Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT Batch ID 187345 Collateral ID 0 | | | | | | | | | | | |
| | | Invoice Number: 1316097-202308F | | | | | | | | | | | |
| 09/25/23 08/31/23 | 01/01/22 | Insurance Cost Disb ACH Ref.# 163730 | 0 0 | (47,004.61) | | 296,453.67 | | | (6,627.01) | | 307.34 | $841.30 | ACH |
| | | Payee: STERLING CLAIMS MANAGEMENT, INC Batch ID:1186816 Collateral ID 0 | | | | | | | | | | | |
| | | Invoice Number: SP083123 | | | | | | | | | | | |
| 09/13/23 | 08/26/23 | Lender Placed Hazard D ACH Ref.# 127403 | 0 0 | (214.77) | | 296,453.67 | (214.77) | | (6,627.01) | | 307.34 | $841.30 | None |
| | | Payee: Proctor Financial Batch ID:1178804 Collateral ID:0 | | | | | | | | | | | |
| 09/13/23 08/30/23 | 01/01/22 | Property Inspection Dist ACH Ref.# 127454 | 0 0 | (20.00) | | 296,453.67 | | | (6,412.24) | | 307.34 | $841.30 | ACH |
| | | Payee: GUARDIAN ASSET MANAGEMENT Batch ID:1178824 Collateral ID:0 | | | | | | | | | | | |
| | | Invoice Number: T0029819106 | | | | | | | | | | | |
| 09/13/23 08/25/23 | 01/01/22 | FC Costs Disb ACH Ref.# 127516 | 0 0 | (58.29) | | 296,453.67 | | | (6,412.24) | | 307.34 | $841.30 | ACH |
| | | Payee: TROTT LAW, P.C. Batch ID:1178824 Collateral ID:0 | | | | | | | | | | | |
| | | Invoice Number: 513383F0103 | | | | | | | | | | | |
| 09/13/23 08/25/23 | 01/01/22 | FC Costs Disb ACH Ref.#:127516 | 0 0 | (662.00) | | 296,453.67 | | | (6,412.24) | | 307.34 | $841.30 | ACH |
| | | Payee: TROTT LAW, P.C. Batch ID:1178824 Collateral ID:0 | | | | | | | | | | | |
| | | Invoice Number: 513383F0103 | | | | | | | | | | | |
| 08/29/23 07/01/23 | 01/01/22 | Skip Trace Disb ACH Ref.# 125664 | 0 0 | (0.02) | | 296,453.67 | | | (6,412.24) | | 307.34 | $841.30 | ACH |
| | | Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT Batch ID 168111 Collateral ID 0 | | | | | | | | | | | |
| | | Invoice Number 1316961-202391B | | | | | | | | | | | |
| 08/29/23 08/26/23 | 01/01/22 | Appraisal Disb ACH Ref.#:125696 | 0 0 | (600.00) | | 296,453.67 | | | (6,412.24) | | 307.34 | $841.30 | ACH |
| | | Payee: eStreet Appraisal Management LLC Batch ID:1168130 Collateral ID 0 | | | | | | | | | | | |
| | | Invoice Number: 23017206 | | | | | | | | | | | |

1:26-cv-468

BATES-000235

1:26-cv-468

EX-042

RMII000235

Loanhist.rpt

12/23/2024 6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #7

**Loan ID**    **Borrower Name**
5110    **ROBERT MCALKICH**

| Trans Date / Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/25/23 | 01/01/22 | Certified Mail Cost Disb | 0 | 0 | (11.37) | | 296,453.67 | | | (6,412.24) | | 307.34 | $841.30 | ACH |
| | | ACH Ref.#:125412 | | | Payee: SOURCEHOV Batch ID:1166397 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: INVLIV00714670 | | | | | | | | | | | | |
| 08/25/23 | 01/01/22 | Certified Mail Cost Disb | 0 | 0 | (5.54) | | 296,453.67 | | | (6,412.24) | | 307.34 | $841.30 | ACH |
| | | ACH Ref.#:125412 | | | Payee: SOURCEHOV Batch ID:1166397 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: INVLIV00714670 | | | | | | | | | | | | |
| 08/23/23 08/04/23 | 01/01/22 | Skip Trace Disb | 0 | 0 | (32.00) | | 296,453.67 | | | (6,412.24) | | 307.34 | $841.30 | ACH |
| | | ACH Ref.#:125088 | | | Payee: EXPRESS CAPITAL SERVICES Batch ID:1164336 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 7312023 | | | | | | | | | | | | |
| 08/22/23 | 01/01/22 | Loss Draft Payment | 0 | 0 | 304,640.05 | | 296,453.67 | | | (6,412.24) | | 307.34 | $841.30 | Check |
| | | Check # 10013665 | | | Batch ID:1163634 | | | | | | | | | |
| 08/22/23 07/31/23 | 01/01/22 | AVM Advance Disb | 0 | 0 | (1.63) | | 296,453.67 | | | (6,412.24) | | 307.34 | $841.30 | ACH |
| | | ACH Ref.#:124791 | | | Payee: ASSETVAL Batch ID:1162982 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 1124-4860 | | | | | | | | | | | | |
| 08/17/23 | 09/14/23 | Town Tax Bill 1 | 0 | 0 | (2,075.50) | | 296,453.67 | | (2,075.50) | (6,412.24) | | 307.34 | $841.30 | None |
| | | ACH Ref.#:124130 | | | Payee: ORANGE TOWNSHIP Batch ID:1158386 Collateral ID:0 | | | | | | | | | |
| 08/09/23 08/03/23 | 01/01/22 | Property Inspection Dist | 0 | 0 | (20.00) | | 296,453.67 | | | (4,336.74) | | 307.34 | $841.30 | ACH |
| | | ACH Ref.#:123085 | | | Payee: GUARDIAN ASSET MANAGEMENT Batch ID:1154721 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: T0029563720 | | | | | | | | | | | | |
| 08/08/23 08/03/23 | 01/01/22 | FC Costs - NR Disb | 0 | 0 | (190.00) | | 296,453.67 | | | (4,336.74) | | 307.34 | $841.30 | ACH |
| | | ACH Ref.#:122965 | | | Payee: TROTT LAW, P.C. Batch ID:1153220 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 513383F0102 | | | | | | | | | | | | |
| 08/08/23 08/03/23 | 01/01/22 | FC Costs - NR Disb | 0 | 0 | (190.00) | | 296,453.67 | | | (4,336.74) | | 307.34 | $841.30 | ACH |
| | | ACH Ref.#:122965 | | | Payee: TROTT LAW, P.C. Batch ID:1153220 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 513383F0102 | | | | | | | | | | | | |
| 08/07/23 | 07/26/23 | Lender Placed Hazard I | 0 | 0 | (214.77) | | 296,453.67 | | (214.77) | (4,336.74) | | 307.34 | $841.30 | None |
| | | ACH Ref.#:122641 | | | Payee: Proctor Financial Batch ID:1152168 Collateral ID:0 | | | | | | | | | |

1:26-cv-468

BATES-000236

1:26-cv-468      EX-042      PLTF DISC 000244 RMIII000236

Loanhist.rpt

12/23/2024 6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #8

| Loan ID | Borrower Name |
|---------|---------------|
| 5110 | ROBERT MCALKICH |

| Trans Date Eff Date | Due Date | Trans Desc | Rev Code Flag | Trans Amount | Principal Amount | Balance | Interest Amount | Escrow Amount | Balance | Late Charge Amount | Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/02/23 07/28/23 | 01/01/22 | Attorney Cost Disb ACH Ref.#.122219 | 0 0 | (37.50) | | 296,453.67 | | | (4,121.97) | | 307.34 | $841.30 | ACH |
| | | Invoice Number: 513383F0101 Payee: TROTT LAW, P.C. Batch ID:1149286 Collateral ID:0 | | | | | | | | | | | |
| 08/02/23 07/28/23 | 01/01/22 | FC Costs - NR Disb ACH Ref.# 122219 | 0 0 | (532.50) | | 296,453.67 | | | (4,121.97) | | 307.34 | $841.30 | ACH |
| | | Invoice Number: 513383F0101 Payee: TROTT LAW, P.C. Batch ID:1149286 Collateral ID:0 | | | | | | | | | | | |
| 08/02/23 07/28/23 | 01/01/22 | FC Costs - NR Disb ACH Ref.# 122219 | 0 0 | (665.00) | | 296,453.67 | | | (4,121.97) | | 307.34 | $841.30 | ACH |
| | | Invoice Number: 513383F0101 Payee: TROTT LAW, P.C. Batch ID:1149286 Collateral ID:0 | | | | | | | | | | | |
| 08/02/23 08/01/23 | 01/01/22 | Title Cost Disb ACH Ref.#.122126 | 0 0 | (350.00) | | 296,453.67 | | | (4,121.97) | | 307.34 | $841.30 | ACH |
| | | Invoice Number: 23368988FS Payee: AVENUE 365 LENDER SERVICES LLC Batch ID:1149286 Collateral ID:0 | | | | | | | | | | | |
| 07/30/23 06/01/23 | 01/01/22 | Skip Trace Disb ACH Ref.# 121761 | 0 0 | (0.02) | | 296,453.67 | | | (4,121.97) | | 307.34 | $841.30 | ACH |
| | | Invoice Number: 1360797-202306E Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT Batch ID:146918 Collateral ID:0 | | | | | | | | | | | |
| 07/25/23 06/30/23 | 01/01/22 | AVM Advance Disb ACH Ref.# 121080 | 0 0 | (1.63) | | 296,453.67 | | | (4,121.97) | | 307.34 | $841.30 | ACH |
| | | Invoice Number: 1123-04824 Payee: ASSETVAL Batch ID:1143086 Collateral ID 0 | | | | | | | | | | | |
| 07/17/23 07/03/23 | 01/01/22 | Property Inspection Dist ACH Ref.#:119992 | 0 0 | (20.00) | | 296,453.67 | | | (4,121.97) | | 307.34 | $841.30 | ACH |
| | | Invoice Number: T0029313751 Payee: GUARDIAN ASSET MANAGEMENT Batch ID 1137339 Collateral ID:0 | | | | | | | | | | | |
| 07/17/23 | 07/01/23 | Late Charge Assess | 0 0 | (15.00) | | 296,453.67 | | | (4,121.97) | (15.00) | 307.34 | $841.30 | None |
| 07/06/23 | 06/26/23 | Lender Placed Hazard D ACH Ref.# 118783 | 0 0 | (211.82) | | 296,453.67 | | (211.82) | (4,121.97) | | 292.34 | $841.30 | None |
| | | Payee: Proctor Financial Batch ID:1131013 Collateral ID 0 | | | | | | | | | | | |
| 06/27/23 | 01/01/22 | Skip Trace Disb ACH Ref.# 118010 | 0 0 | (0.02) | | 296,453.67 | | | (3,910.15) | | 292.34 | $841.30 | ACH |
| | | Invoice Number: 1316097-202305B Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT Batch ID 126312 Collateral ID:0 | | | | | | | | | | | |

1:26-cv-468

1:26-cv-468

EX-042

BATES-000237

RMIII000237

Loanhist.rpt

12/23/2024 6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #9

| Loan ID | Borrower Name |
|---|---|
| 5110 | ROBERT MCALKICH |

| Trans Date / Eff Date | Due Date | Trans Desc | Rev Code Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/27/23 05/31/23 | 01/01/22 | AVM Advance Disb | 0 0 | (1.63) | | 296,453.67 | | | (3,910.15) | | 292.34 | $841.30 | ACH |
| | | ACH Ref.# 117859 | | Payee: ASSETVAL Batch ID 1125636 Collateral ID.0 | | | | | | | | | |
| | | Invoice Number 1122-04871 | | | | | | | | | | | |
| 06/23/23 06/20/23 | 01/01/22 | Property Pres Disb | 0 0 | (17.40) | | 296,453.67 | | | (3,910.15) | | 292.34 | $841.30 | ACH |
| | | ACH Ref.# 117576 | | Payee: BRON INC Batch ID:1123817 Collateral ID.0 | | | | | | | | | |
| | | Invoice Number 2770914 | | | | | | | | | | | |
| 06/17/23 | 06/01/23 | Late Charge Assess | 0 0 | (15.00) | | 296,453.67 | | | (3,910.15) | (15.00) | 292.34 | $841.30 | None |
| 06/13/23 06/08/23 | 01/01/22 | Property Inspection Dist | 0 0 | (20.00) | | 296,453.67 | | | (3,910.15) | | 277.34 | $841.30 | ACH |
| | | ACH Ref.#.116369 | | Payee: GUARDIAN ASSET MANAGEMENT Batch ID 1116466 Collateral ID.0 | | | | | | | | | |
| | | Invoice Number T0029052968 | | | | | | | | | | | |
| 06/06/23 | 05/26/23 | Lender Placed Hazard D | 0 0 | (644.30) | | 296,453.67 | (644.30) | | (3,910.15) | | 277.34 | $841.30 | None |
| | | ACH Ref.# 115439 | | Payee: Proctor Financial Batch ID 1111745 Collateral ID.0 | | | | | | | | | |
| 05/29/23 04/01/23 | 01/01/22 | Skip Trace Disb | 0 0 | (0.02) | | 296,453.67 | | | (3,265.85) | | 277.34 | $841.30 | ACH |
| | | ACH Ref.# 114644 | | Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT Batch IDI106777 Collateral ID 0 | | | | | | | | | |
| | | Invoice Number 1316097-2023G | | | | | | | | | | | |
| 05/24/23 04/30/23 | 01/01/22 | AVM Advance Disb | 0 0 | (1.63) | | 296,453.67 | | | (3 265.85) | | 277.34 | $841.30 | ACH |
| | | ACH Ref.# 114183 | | Payee: ASSETVAL Batch ID.1103892 Collateral ID 0 | | | | | | | | | |
| | | Invoice Number 1121-05152 | | | | | | | | | | | |
| 05/17/23 | 05/01/23 | Late Charge Assess | 0 0 | (15.00) | | 296,453.67 | | | (3,265.85) | (15.00) | 277.34 | $841.30 | None |
| 05/01/23 04/30/23 | 01/01/22 | Skip Trace Disb | 0 0 | (0.02) | | 296,453.67 | | | (3,265.85) | | 262.34 | $841.30 | ACH |
| | | ACH Ref.#.111275 | | Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT Batch IDI085141 Collateral ID 0 | | | | | | | | | |
| | | Invoice Number 1316097-2023F | | | | | | | | | | | |
| 04/21/23 | 04/21/23 | USDA Rural Housing Di | 0 0 | (1,026.36) | | 296,453.67 | (1,026.36) | | (3,265.85) | | 262.34 | $841.30 | None |
| | | ACH Ref.# 110314 | | Payee: USDA Batch ID 1078783 Collateral ID 0 | | | | | | | | | |
| 04/17/23 | 04/01/23 | Late Charge Assess | 0 0 | (15.00) | | 296,453.67 | | | (2,239.49) | (15.00) | 262.34 | $841.30 | None |

1:26-cv-468

BATES-000238

1.26-cv-468    EX-042    PLTF-DISC-000242 RMIII000238

Loanhist.rpt

12/23/2024 6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #10

**Loan ID**    **Borrower Name**

5110    **ROBERT MCALKICH**

| Trans Date Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/31/23 | 01/01/22 | Skip Trace Disb | 0 | 0 | (0.02) | | 296,453.67 | | | (2,239.49) | | 247.34 | $841.30 | ACH |
| | | ACH Ref.# 107884 | | | Payee: TRANSUNION RISK & ALTERNATIVE DATA SOLUT Batch ID1064442 Collateral ID 0 | | | | | | | | | |
| | | Invoice Number: 1316097-202302-E | | | | | | | | | | | | |
| 02/24/23 01/31/23 | 01/01/22 | AVM Advance Disb | 0 | 0 | (1.63) | | 296,453.67 | | | (2,239.49) | | 247.34 | $841.30 | ACH |
| | | ACH Ref.#:103640 | | | Payee: ASSETVAL Batch ID:1037098 Collateral ID 0 | | | | | | | | | |
| | | Invoice Number: 1118-07560 | | | | | | | | | | | | |
| 01/18/23 12/31/22 | 01/01/22 | AVM Advance Disb | 0 | 0 | (1.63) | | 296,453.67 | | | (2,239.49) | | 247.34 | $841.30 | ACH |
| | | ACH Ref.# 99110 | | | Payee: ASSETVAL Batch ID:1010827 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 1116-06483 | | | | | | | | | | | | |
| 01/06/23 01/01/23 | 01/01/22 | Recording AOM Disb | 0 | 0 | (0.75) | | 296,453.67 | | | (2,239.49) | | 247.34 | $841.30 | ACH |
| | | ACH Ref.# 98106 | | | Payee: NATIONWIDE TITLE CLEARING, INC. Batch ID:1004268 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 118-SPTDA | | | | | | | | | | | | |
| 01/06/23 01/01/23 | 01/01/22 | Recording AOM Disb | 0 | 0 | (1.00) | | 296,453.67 | | | (2,239.49) | | 247.34 | $841.30 | ACH |
| | | ACH Ref.# 98106 | | | Payee: NATIONWIDE TITLE CLEARING, INC. Batch ID:1004268 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 118-SPTDA | | | | | | | | | | | | |
| 01/06/23 01/01/23 | 01/01/22 | Assignment Prep Disb | 0 | 0 | (9.50) | | 296,453.67 | | | (2,239.49) | | 247.34 | $841.30 | ACH |
| | | ACH Ref.# 98106 | | | Payee: NATIONWIDE TITLE CLEARING, INC. Batch ID:1004268 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 118-SPTDA | | | | | | | | | | | | |
| 01/06/23 01/01/23 | 01/01/22 | Certified Mail Cost Disb | 0 | 0 | (0.11) | | 296,453.67 | | | (2,239.49) | | 247.34 | $841.30 | ACH |
| | | ACH Ref.# 98106 | | | Payee: NATIONWIDE TITLE CLEARING, INC. Batch ID:1004268 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 118-SPTDA | | | | | | | | | | | | |
| 12/27/22 11/30/22 | 01/01/22 | AVM Advance Disb | 0 | 0 | (1.63) | | 296,453.67 | | | (2,239.49) | | 247.34 | $841.30 | ACH |
| | | ACH Ref.# 96766 | | | Payee: ASSETVAL Batch ID:996888 Collateral ID:0 | | | | | | | | | |
| | | Invoice Number: 1115-06702 | | | | | | | | | | | | |
| 12/13/22 | 12/31/22 | Town Tax Bill 2 | 0 | 0 | (612.80) | | 296,453.67 | | (612.80) | (2,239.49) | | 247.34 | $841.30 | None |
| | | ACH Ref.# 95063 | | | Payee: ORANGE TOWNSHIP Batch ID:986515 Collateral ID:0 | | | | | | | | | |

**1:26-cv-468**

1:26-cv-468

EX-042

**BATES-000239**

PLTF DISC 000244
RMIII000239

Loanhist.rpt

12/23/2024  6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #11

| Loan ID | Borrower Name |
|---|---|
| ▆▆▆5110 | ROBERT MCALKICH |

| Trans Date Eff Date | Due Date | Trans Desc | Rev Code Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/12/22 12/05/22 | 01/01/22 | Recording AOM Disb ACH Ref.# 95041 | 0 0 | (30.00) | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | ACH |
| | | Payee: NATIONWIDE TITLE CLEARING, INC. Batch ID:988734 Collateral ID:0 | | | | | | | | | | | |
| | | Invoice Number: 114-SPTDA | | | | | | | | | | | |
| 12/12/22 12/01/22 | 01/01/22 | Document Retrieval Dist ACH Ref.# 95040 | 0 0 | (4.60) | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | ACH |
| | | Payee: NATIONWIDE TITLE CLEARING, INC. Batch ID:988726 Collateral ID:0 | | | | | | | | | | | |
| | | Invoice Number: 113-SPTDA | | | | | | | | | | | |
| 12/12/22 12/01/22 | 01/01/22 | Assignment Prep Disb ACH Ref.# 95040 | 0 0 | (4.03) | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | ACH |
| | | Payee: NATIONWIDE TITLE CLEARING, INC. Batch ID:988726 Collateral ID:0 | | | | | | | | | | | |
| | | Invoice Number: 113-SPTDA | | | | | | | | | | | |
| 12/12/22 12/01/22 | 01/01/22 | Document Retrieval Dist ACH Ref.#.95040 | 0 0 | (13.50) | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | ACH |
| | | Payee: NATIONWIDE TITLE CLEARING, INC. Batch ID:988726 Collateral ID:0 | | | | | | | | | | | |
| | | Invoice Number: 113-SPTDA | | | | | | | | | | | |
| 11/30/22 11/15/22 | 01/01/22 | Property Inspection Dist ACH Ref.#.93408 | 0 0 | (20.00) | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | ACH |
| | | Payee: GUARDIAN ASSET MANAGEMENT Batch ID:980935 Collateral ID:0 | | | | | | | | | | | |
| | | Invoice Number: T0027374211 | | | | | | | | | | | |
| 11/28/22 | 01/01/22 | BPO Pmt | 0 0 | (170.00) | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | Reclassified |
| | | Batch ID 979463 | | | | | | | | | | | |
| 11/28/22 | 01/01/22 | BPO/Aprsl Cost Pmt | 0 0 | 170.00 | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | Reclassified |
| | | Batch ID:979463 | | | | | | | | | | | |
| 11/28/22 11/23/22 | 01/01/22 | BPO/Aprsl Cost Disb ACH Ref.# 93114 | 0 0 | (170.00) | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | ACH |
| | | Payee: eStreet Appraisal Management LLC Batch ID:978944 Collateral ID:0 | | | | | | | | | | | |
| | | Invoice Number: 22051627 | | | | | | | | | | | |
| 11/05/22 | 01/01/22 | New Loan | 0 0 | 0.00 | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | None |
| 11/02/22 | 05/01/21 | Property Pres Assess Invoice Number: 0 | 0 0 | (15.00) | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | PriorServicer |
| 09/15/22 | 05/01/21 | Property Pres Assess Invoice Number: 0 | 0 0 | (15.00) | | 296,453.67 | | | (1,626.69) | | 247.34 | $841.30 | PriorServicer |

1:26-cv-468

BATES-000240

Loanhist.rpt

12/23/2024  6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #12

**Loan ID**  **Borrower Name**
5110    ROBERT MCALKICH

| Trans Date / Eff Date | Due Date | Trans Desc | Rev Code / Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/25/22 | 01/01/22 City Tax Bill 1 Invoice Number: 0 | | 0 0 | (1,976.67) | | 296,453.67 | | (1,976.67) | (1,626.69) | | 247.34 | $841.30 | PriorServicer |
| 08/08/22 | 05/01/21 Property Pres Assess Invoice Number: 0 | | 0 0 | (15.00) | | 296,453.67 | | | 349.98 | | 247.34 | $841.30 | PriorServicer |
| 07/26/22 | 05/01/21 Property Pres Waive Invoice Number: 0 | | 0 0 | 15.00 | | 296,453.67 | | | 349.98 | | 247.34 | $841.30 | PriorServicer |
| 06/23/22 | 05/01/21 Property Pres Assess Invoice Number: 0 | | 0 0 | (15.00) | | 296,453.67 | | | 349.98 | | 247.34 | $841.30 | PriorServicer |
| 05/26/22 | 05/01/21 Property Pres Assess Invoice Number: 0 | | 0 0 | (15.00) | | 296,453.67 | | | 349.98 | | 247.34 | $841.30 | PriorServicer |
| 05/03/22 | 01/01/22 PMI Disb Invoice Number: 0 | | 0 0 | (1,049.73) | | 296,453.67 | | (1,049.73) | 349.98 | | 247.34 | $841.30 | PriorServicer |
| 04/15/22 | 05/01/21 Property Pres Assess Invoice Number: 0 | | 0 0 | (15.00) | | 296,453.67 | | | 1,399.71 | | 247.34 | $841.30 | PriorServicer |
| 03/10/22 | 05/01/21 Property Pres Assess Invoice Number: 0 | | 0 0 | (15.00) | | 296,453.67 | | | 1,399.71 | | 247.34 | $841.30 | PriorServicer |
| 02/25/22 | 01/01/22 Hazard Disb Invoice Number: 0 | | 0 0 | (2,325.48) | | 296,453.67 | | (2,325.48) | 1,399.71 | | 247.34 | $841.30 | PriorServicer |
| 02/22/22 | 01/01/22 Regular Payment Invoice Number: 0 | | 7 0 | (1,641.31) | (557.31) | 296,453.67 | (679.37) | (404.63) | 3,725.19 | | 247.34 | $841.30 | PriorServicer |
| 02/22/22 | 01/01/22 Unapplied Payment Invoice Number: 0 | | 7 0 | 820.65 | | 295,896.36 | | | 4,129.82 | | 247.34 | $841.30 | PriorServicer |
| 02/16/22 | 01/01/22 Late Charge Waive Invoice Number: 0 | | 0 0 | 49.47 | | 295,896.36 | | | 4,129.82 | 49.47 | 247.34 | $20.65 | PriorServicer |
| 02/15/22 | 01/01/22 Unapplied Payment Invoice Number: 0 | | 0 0 | (1,641.31) | | 295,896.36 | | | 4,129.82 | | 296.81 | $20.65 | PriorServicer |
| 02/15/22 | 01/01/22 Regular Payment Invoice Number: 0 | | 0 7 | 1,641.31 | 557.31 | 295,896.36 | 679.37 | 404.63 | 4,129.82 | | 296.81 | $1,661.96 | PriorServicer |
| 02/01/22 | 01/01/22 Unapplied Payment Invoice Number: 0 | | 0 0 | 820.65 | | 296,453.67 | | | 3,725.19 | | 296.81 | $1,661.96 | PriorServicer |

1:26-cv-468

BATES-000241

PLTF DISC 000246

RMIII000241

EX-042

Loanhist.rpt

12/23/2024  6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #13

**Loan ID**          **Borrower Name**

5110          **ROBERT MCALKICH**

| Trans Date Eff Date | Due Date | Trans Desc | Rev Code Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/22/22 | 01/01/22 | Unapplied Payment Invoice Number: 0 | 0 0 | (820.65) | | 296,453.67 | | | 3,725.19 | | 296.81 | | $841.31 PriorServicer |
| 01/17/22 | 01/01/22 | Late Charge Waive Invoice Number: 0 | 0 0 | 49.47 | | 296,453.67 | | | 3,725.19 | 49.47 | 296.81 | | $1,661.96 PriorServicer |
| 01/15/22 | 01/01/22 | Unapplied Payment Invoice Number: 0 | 0 0 | 820.66 | | 296,453.67 | | | 3,725.19 | | 346.28 | | $1,661.96 PriorServicer |
| 01/03/22 | 12/01/21 | Unapplied Payment Invoice Number: 0 | 0 0 | (1,641.31) | | 296,453.67 | | | 3,725.19 | | 346.28 | | $841.30 PriorServicer |
| 01/03/22 | 12/01/21 | Regular Payment Invoice Number: 0 | 0 0 | 1,641.31 | 556.03 | 296,453.67 | 680.65 | 404.63 | 3,725.19 | | 346.28 | | $2,482.61 PriorServicer |
| 12/18/21 | 12/01/21 | City Tax Bill 1 Invoice Number: 0 | 0 0 | (375.23) | | 297,009.70 | | (375.23) | 3,320.56 | | 346.28 | | $2,482.61 PriorServicer |
| 12/16/21 | 12/01/21 | Late Charge Waive Invoice Number: 0 | 0 0 | 49.47 | | 297,009.70 | | | 3,695.79 | 49.47 | 346.28 | | $2,482.61 PriorServicer |
| 12/15/21 | 12/01/21 | Unapplied Payment Invoice Number: 0 | 0 0 | 820.66 | | 297,009.70 | | | 3,695.79 | | 395.75 | | $2,482.61 PriorServicer |
| 12/01/21 | 11/01/21 | Unapplied Payment Invoice Number: 0 | 0 0 | (1,641.31) | | 297,009.70 | | | 3,695.79 | | 395.75 | | $1,661.95 PriorServicer |
| 12/01/21 | 11/01/21 | Regular Payment Invoice Number: 0 | 0 0 | 1,641.31 | 554.76 | 297,009.70 | 681.92 | 404.63 | 3,695.79 | | 395.75 | | $3,303.26 PriorServicer |
| 11/16/21 | 11/01/21 | Late Charge Waive Invoice Number: 0 | 0 0 | 49.47 | | 297,564.46 | | | 3,291.16 | 49.47 | 395.75 | | $3,303.26 PriorServicer |
| 11/15/21 | 11/01/21 | Unapplied Payment Invoice Number: 0 | 0 0 | 820.66 | | 297,564.46 | | | 3,291.16 | | 445.22 | | $3,303.26 PriorServicer |
| 11/03/21 | 10/01/21 | Unapplied Payment Invoice Number: 0 | 0 0 | (1,641.31) | | 297,564.46 | | | 3,291.16 | | 445.22 | | $2,482.60 PriorServicer |
| 11/03/21 | 10/01/21 | Regular Payment Invoice Number: 0 | 0 0 | 1,641.31 | 553.49 | 297,564.46 | 683.19 | 404.63 | 3,291.16 | | 445.22 | | $4,123.91 PriorServicer |
| 10/30/21 | 09/01/21 | Late Charge Waive Invoice Number: 0 | 0 0 | 49.46 | | 298,117.95 | | | 2,886.53 | 49.46 | 445.22 | | $4,123.91 PriorServicer |

1:26-cv-468

BATES-000242
RMIII000242

EX-042

Loanhist.rpt

12/23/2024  6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #14

**Loan ID**     **Borrower Name**
5110    **ROBERT MCALKICH**

| Trans Date / Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/15/21 | 09/01/21 | Unapplied Payment  Invoice Number: 0 | 0 | 0 | 820.65 | | 298,117.95 | | | 2,886.53 | | 494.68 | $4,123.91 | PriorServicer |
| 10/07/21 | 09/01/21 | Unapplied Payment  Invoice Number: 0 | 0 | 0 | (820.66) | | 298,117.95 | | | 2,886.53 | | 494.68 | $3,303.26 | PriorServicer |
| 10/01/21 | 09/01/21 | Unapplied Payment  Invoice Number: 0 | 0 | 0 | 820.66 | | 298,117.95 | | | 2,886.53 | | 494.68 | $4,123.92 | PriorServicer |
| 09/29/21 | 09/01/21 | Escrow Only Payment  Invoice Number: 0 | 0 | 0 | 1,213.38 | | 298,117.95 | | 1,213.38 | 2,886.53 | | 494.68 | $3,303.26 | PriorServicer |
| 09/22/21 | 09/01/21 | Unapplied Payment  Invoice Number: 0 | 0 | 0 | (800.00) | | 298,117.95 | | | 1,673.15 | | 494.68 | $3,303.26 | PriorServicer |
| 09/16/21 | 09/01/21 | Principal Only Payment  Invoice Number: 0 | 0 | 0 | 799.99 | 799.99 | 298,117.95 | | | 1,673.15 | | 494.68 | $4,103.26 | PriorServicer |
| 09/16/21 | 09/01/21 | Escrow Only Payment  Invoice Number: 0 | 0 | 0 | 0.01 | | 298,917.94 | | 0.01 | 1,673.15 | | 494.68 | $4,103.26 | PriorServicer |
| 09/16/21 | 09/01/21 | Regular Payment  Invoice Number: 0 | 7 | 0 | (1,641.32) | (551.66) | 298,917.94 | (685.02) | (404.64) | 1,673.14 | | 494.68 | $4,103.26 | PriorServicer |
| 09/16/21 | 09/01/21 | Unapplied Payment  Invoice Number: 0 | 7 | 0 | 820.65 | | 298,366.28 | | | 2,077.78 | | 494.68 | $4,103.26 | PriorServicer |
| 09/15/21 | 10/01/21 | Unapplied Payment  Invoice Number: 0 | 0 | 0 | (820.65) | | 298,366.28 | | | 2,077.78 | | 494.68 | $3,282.61 | PriorServicer |
| 09/15/21 | 10/01/21 | Regular Payment  Invoice Number: 0 | 0 | 0 | 1,641.32 | 551.66 | 298,366.28 | 685.02 | 404.64 | 2,077.78 | | 494.68 | $4,103.26 | PriorServicer |
| 09/15/21 | 09/01/21 | Unapplied Payment  Invoice Number: 0 | 0 | 0 | 820.65 | | 298,917.94 | | | 1,673.14 | | 494.68 | $4,103.26 | PriorServicer |
| 09/01/21 | 09/01/21 | Regular Payment  Invoice Number: 0 | 0 | 0 | 1,641.31 | 550.40 | 298,917.94 | 686.28 | 404.63 | 1,673.14 | | 494.68 | $3,282.61 | PriorServicer |
| 09/01/21 | 09/01/21 | Unapplied Payment  Invoice Number: 0 | 0 | 0 | (820.65) | | 299,468.34 | | | 1,268.51 | | 494.68 | $3,282.61 | PriorServicer |
| 08/30/21 | 08/01/21 | City Tax Bill 1  Invoice Number: 0 | 0 | 0 | (1,213.38) | | 299,468.34 | | (1,213.38) | 1,268.51 | | 494.68 | $4,103.26 | PriorServicer |

BATES-000243

RLTF DISC 000248

1:26-cv-468                                      EX-042                                      RMIII000243

Loanhist.rpt

12/23/2024  6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #15

**Loan ID**    **Borrower Name**
5110    **ROBERT MCALKICH**

| Trans Date / Eff Date | Due Date | Trans Desc | Rev Code | Flag | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unappl. Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/16/21 | 08/01/21 | Unapplied Payment | 0 | 0 | 820.65 | | 299,468.34 | | | 2,481.89 | | 494.68 | | $4,103.26 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 08/02/21 | 08/01/21 | Regular Payment | 0 | 0 | 1,641.30 | 549.14 | 299,468.34 | 687.54 | 404.62 | 2,481.89 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 08/02/21 | 08/01/21 | Unapplied Payment | 0 | 0 | (820.65) | | 300,017.48 | | | 2,077.27 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 07/20/21 | 07/01/21 | Unapplied Payment | 7 | 0 | 820.65 | | 300,017.48 | | | 2,077.27 | | 494.68 | | $4,103.26 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 07/20/21 | 07/01/21 | Regular Payment | 7 | 0 | (1,641.31) | (549.14) | 300,017.48 | (687.54) | (404.63) | 2,077.27 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 07/15/21 | 08/01/21 | Unapplied Payment | 0 | 0 | (820.65) | | 299,468.34 | | | 2,481.90 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 07/15/21 | 08/01/21 | Regular Payment | 0 | 0 | 1,641.31 | 549.14 | 299,468.34 | 687.54 | 404.63 | 2,481.90 | | 494.68 | | $4,103.26 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 07/01/21 | 07/01/21 | Unapplied Payment | 0 | 0 | 820.65 | | 300,017.48 | | | 2,077.27 | | 494.68 | | $4,103.26 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 07/01/21 | 07/01/21 | Principal Only Payment | 0 | 0 | 820.75 | 820.75 | 300,017.48 | | | 2,077.27 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 06/17/21 | 07/01/21 | Regular Payment | 0 | 7 | 1,641.31 | 546.01 | 300,838.23 | 690.67 | 404.63 | 2,077.27 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 06/16/21 | 06/01/21 | Regular Payment | 0 | 0 | 1,641.31 | 544.76 | 301,384.24 | 691.92 | 404.63 | 1,672.64 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 06/07/21 | 05/01/21 | Regular Payment | 7 | 0 | (1,641.31) | (544.76) | 301,929.00 | (691.92) | (404.63) | 1,268.01 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 06/03/21 | 06/01/21 | Regular Payment | 0 | 0 | 1,641.31 | 544.76 | 301,384.24 | 691.92 | 404.63 | 1,672.64 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 05/28/21 | 05/01/21 | Principal Only Payment | 0 | 0 | 1,000.00 | 1,000.00 | 301,929.00 | | | 1,268.01 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |
| 05/10/21 | 05/01/21 | Escrow Only Payment | 0 | 0 | 1,268.01 | | 302,929.00 | | 1,268.01 | 1,268.01 | | 494.68 | | $3,282.61 PriorServicer |
| | | Invoice Number: 0 | | | | | | | | | | | | |

BATES-000244

1:26-cv-468                                                    EX-042

PLTF DISC 000240
RMIII000244

Loanhist.rpt

12/23/2024  6:51:14PM

# Shellpoint Mortgage Servicing
## Loan History Summary

Page #16

**Loan ID**  **Borrower Name**
5110  **ROBERT MCALKICH**

| Trans Date Eff Date | Due Date | Trans Desc | Rev Code Flag | Trans Amount | Principal Amount | Balance | Interest Amount | Escrow Amount | Balance | Late Charge Amount | Balance | Unappl Balance | Money Type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/10/21 | 05/01/21 | Escrow Only Payment Invoice Number: 0 | 0 0 | (1,268.01) | | 302,929.00 | | (1,268.01) | | | 494.68 | | $3,282.61 PriorServicer |
| 04/22/21 | 05/01/21 | Escrow Only Payment Invoice Number: 0 | 0 0 | 1,268.01 | | 302,929.00 | | 1,268.01 | 1,268.01 | | 494.68 | | $3,282.61 PriorServicer |
| | | | | | $302,929.00 | | $22,957.17 | $0.00 | | | | | |

1:26-cv-468

1:26-cv-468

EX-042

BATES-000245

PLTF DISC 000250
RMIII000245

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-050

Sheriff Sale Record and Sheriff Deed Packet

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.



A PROFESSIONAL CORPORATION

| | |
|---|---|
| MICHIGAN: | MINNESOTA: |
| 31440 Northwestern Hwy., Suite 145 | 25 Dale St. North |
| Farmington Hills, Michigan 48334 | Saint Paul, Minnesota 55102 |
| (248) 642-2515 / fax (248) 642-3628 | (651) 209-9760 / fax (651) 292-9482 |

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT
ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.**

December 29, 2023

Robert McAlkich
8698 Community Blvd
Warren, MI 48093

RE: Trott # 513383F02

Enclosed please find a copy of the publication notice which has been submitted pursuant to MCL 600.3208.

Attention Tenant(s):
Tenant(s) may be eligible for SCRA rights/benefits. Please contact our office and provide your full name(s) and social security number(s) if you desire to claim SCRA protection.

FC H
Very truly yours,
Trott Law, P.C.

Regular business hours: 8:30 a.m. to 5:00 p.m.

INOFFICIAL COPY

## REDEMPTION AFFIDAVIT

### PURSUANT TO MSA SEC.3420 (2)

The amount required to redeem the within property, commonly known as **1610 Spencer SE, Kalkaska, MI 49646**, is the bid amount of **$25,501.00 (Twenty-Five-Thousand, Five-Hundred One and 00/100 Dollars)**, plus interest at the per diem rate of **$1.92 (One and 92/100 Dollars)** from the date of the sale to the date of redemption, plus any additional amounts that may be added pursuant to MCL 600.3240 (4). ANY REDEEMING PARTY SHOULD NOTE THAT THIS AMOUNT MAY INCREASE to include amounts paid by **Jennifer Hood** for taxes, amounts necessary to redeem senior liens, condominium assessments, homeowner associations assessments, community association assessments, insurance premiums, or any other amounts as provided by MCL 600.3240 (4), as well as attorneys fees, costs, and interest thereon at the interest rate specified in the mortgage from the date of the payment to the date of the redemption. The last date of redemption is **August 15, 2024**, after which if there has been no redemption, the Sheriffs Deed will become operative, unless extinguished pursuant to MCL 600.3238 or unless determined abandoned under MCL 600.3241a, and in the later case, the redemption period shall be the latter of 30 days from the date of sale or 15 days from the date of posting and mailing of notice of abandonment. ANY REDEEMING PARTY SHOULD NOTE THAT THIS DATE MAY CHANGE AS SET FORTH IN SUBSEQUENT AFFIDAVITS OR AS PROVIDED BY APPLICABLE LAW.

_(signature)_

**Jennifer Hood**
4377 Ground Pine Trail
Traverse City, MI 49686
(248) 709-9293

STATE OF MICHIGAN)

COUNTY OF **Kalkaska**)

Subscribed and sworn to before me by **Jennifer Gail Hood** on March 6th, 2024

_(signature)_ , Notary Public

**Kalkaska** County, Acting in **Kalkaska** County, Michigan

My commission Expires: April 27th 2029

NICOLE EDWARDS
NOTARY PUBLIC-MICHIGAN
KALKASKA COUNTY
MY COMISSION EXPIRES 04/27/2029
ACTING IN KALKASKA COUNTY

**Exhibit A - Property Description**

PARCEL 2: A part of the West 1/2 of the Northeast 1/4 of Section 22, Town 26 North, Range 7 West described as:Commencing at the North 1/4 corner of said Section 22; thence along the North line of said Section 22, South 89 degrees 30 minutes 27 seconds East 397.75 feet to the Point of Beginning; thence continuing along the North line of said Section 22, South 89 degrees 30 minutes 27 seconds East 190.00 feet; thence South 00 degrees 37 minutes 16 seconds West 217.31 feet; thence South 89 degrees 22 minutes 44 seconds East 13.70 feet; thence South 00 degrees 37 minutes 16 seconds West 27.86 feet; thence North 89 degrees 22 minutes 44 seconds West 13.70 feet; thence South 00 degrees 37 minutes 16 seconds West 354.84 feet; thence North 89 degrees 30 minutes 27 seconds West, 190.00 feet; thence North 00 degrees 37 minutes 16 seconds East, 600.00 feet to the Point of Beginning.Subject to the right of way of Spencer Road over the North 33 feet thereof.Also, Subject to and together with Access Easement 'A' described as: A 33 feet wide access easement over a part of the West 1/2 of the Northeast 1/4 of Section 22, Town 26 North, Range 7 West, being 16.5 feet on each side of and coincident to the following described centerline; Commencing at the North 1/4 corner of said Section 22, thence along the North line of said Section 22, South 89 degrees 30 minutes 27 seconds East 397.75 feet to the Point of Beginning; thence South 00 degrees 37 minutes 16 seconds West 64.81 feet to the Point of Ending. The Sidelines of which to lengthen or shorten to begin on the North line of said Section 22.

513383F02 McAlkich - FC H

Other Charges:

| | |
|---|---|
| Uncollected NSF Fees: | $100.00 |
| Corporate Advance Balance: | $20.00 |
| Unapplied Balance: | ($841.30) |

**TOTAL YOU MUST PAY TO CURE DEFAULT:**      **$27,651.84**

You can cure this default by making a payment of $27,651.84 by 07/04/2023. Please note any additional monthly payments, late charges and other charges that may be due under the Note, Security Instrument and applicable law after the date of this notice must also be paid to bring your account current. You may contact our Loss Mitigation Department at 866-825-2174, Monday - Friday 8:00AM to 9:00PM and Saturday 8:00AM to 1:00PM to obtain updated payment information. You may also visit our website www.shellpointmtg.com. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current default. Please include your loan number and property address with your payment and send to:

Shellpoint Mortgage Servicing
P.O. Box 650840
Dallas, TX 75265-0840

Overnight:
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 866-825-2174.

**To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.**

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, Shellpoint Mortgage Servicing offers consumer assistance programs designed to help resolve delinquencies and avoid foreclosure. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternative to foreclosure. If you would like to learn more about these programs, you may contact Christopher Ogden at 8668252174, ext. 3771, Monday - Friday 8:00AM to 9:00PM and Saturday 8:00AM to 1:00PM to discuss possible options. You may also visit our website www.shellpointmtg.com. WE ARE VERY INTERESTED IN ASSISTING YOU.

You have the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

If foreclosure proceedings are undertaken, we may pursue a deficiency judgment, if permitted by applicable law. Failure to respond to this letter may result in the loss of your property.

**Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.**



STATE OF MICHIGAN
Kalkaska County
03/06/2024
3172135

REAL ESTATE ★ TRANSFER TAX ★
28.60 CO ★
195.00 ST ★
TX # 4008971 ★
LISA

DOCUMENT # 3172135  SHE Pages: 6
Received: 03/06/2024 10:48:00 AM
Recorded: 03/06/2024 10:51:02 AM
State of Michigan - Kalkaska County
Jo Ann DeGraaf, Register of Deeds

### SHERIFF'S DEED ON MORTGAGE SALE

513383F02 McAlkich - FC H

This Indenture Made this 15th day of February, A.D. 2024, between, **Kevin Schaub**, a Deputy Sheriff in and for Kalkaska County, Michigan, whose address is PO Box 1119 Kalkaska, Michigan 49646-1119 , party of the first part, and NewRez LLC d/b/a Shellpoint Mortgage Servicing, whose address is 75 Beattie Pl Ste 300, Greenville, SC 29601-2138 & RW party of the second part (hereinafter called the grantee).

WITNESSETH, That Whereas a certain mortgage was granted by Robert Mcalkich, an unmarried man, mortgagor(s), to Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for lender and lender's successors and/or assigns, Mortgagee, dated April 14, 2021, and recorded on April 19, 2021 in Instrument 3156328, and assigned by said Mortgagee to NewRez LLC d/b/a Shellpoint Mortgage Servicing as assignee as documented by an assignment dated December 1, 2022 recorded on December 1, 2022 in Instrument 3165962, in Kalkaska County Records, Michigan, and

WHEREAS, said mortgage contained a power of sale which has become operative by reason of a default in the condition of said mortgage, and

WHEREAS, no suit or proceedings at law or in equity have been instituted to recover the debt secured by said mortgage or any part thereof, and

WHEREAS, by virtue of said power of sale, and pursuant to the statute of the State of Michigan in such case made and provided, a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in said mortgage, that the said premises, or some part of them, would be sold at 11:00 AM on the 15th day of February, A.D. 2024, at public vendue, that being the place of holding the Circuit Court for Kalkaska County where the premises are situated and

WHEREAS, pursuant to said notice I did, at on the day last aforesaid, expose for sale at public vendue the said lands and tenements hereinafter described, and on such sale did strike off and sell the said lands and tenements to the grantee for the sum of Twenty-Five Thousand Five Hundred and 00/100 Dollars ($25,500.00), that being the highest bid therefore and the grantee being the highest bidder, and one

WHEREAS, said lands and tenements are situated in the Township of Orange, Kalkaska County, Michigan, more particularly described in exhibit A, attached and commonly known as:

1610 Spencer Rd SE

Property Tax Parcel ID 010-022-002-02

This property may be located within the vicinity of farmland or a farm operation. Generally, accepted agricultural and management practices, which may generate noise, dust, odors, and other associated conditions, may be used and are protected by the Michigan right to farm act.

Now, this Indenture Witnesseth, That I, the Deputy Sheriff aforesaid, by virtue of and pursuant to the statute in such case made and provided, and in consideration of the sum of money so paid as aforesaid, have granted, conveyed, bargained and sold, and by this deed do grant, convey, bargain and sell unto the grantee, its successors and assigns, forever, all the estate, right, title and interest, which the said Mortgagor(s) had in said land and tenements and every part thereof, on the 14th day of April A.D. 2021, that being the date of said mortgage, or at any time thereafter, to have and to hold the said lands and tenements and every part thereof to the said grantee, its successors and assigns forever, to their sole and only use, benefit and behoof forever, as fully and absolutely as I, the Deputy Sheriff aforesaid, under the authority aforesaid, might, could or ought to sell the same.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, the date and year first above written.

Deputy Sheriff in and for the County of Kalkaska  **Kevin Schaub**

STATE OF MICHIGAN
COUNTY OF KALKASKA

On **2/15/24** before me, a Notary Public in and for said County of **Kalkaska** came **Kevin Schaub**, a Deputy Sheriff of Kalkaska County, known to me to be the individual described in and who executed the above conveyance, and who acknowledged that she/he executed the same to be her/his free act and deed as such Deputy Sheriff.

★ Jennifer Hood
4377 Ground Pine Trail
Traverse City, MI 49686

Rashelle I. Wirtz
Notary Public. Kalkaska County.
Michigan
My commission expires:
Acting in the county of Kalkaska

THIS INSTRUMENT IS EXEMPT FROM MICHIGAN TRANSFER TAX UNDER MCL 207.526(v); MCL 207.505(h)(ii); and MCL 207.526(h)(ii).

Prepared By: Heide M. Myszak P56449
Trott Law, P.C. 31440 Northwestern Hwy

Trott Law, P.C.
31440 Northwestern Hwy Ste. 145
Farmington Hills, MI 48334-5422
248.642.2515 from 8:30 am to 5 pm EST, Monday to Friday

Date: December 11, 2023

To: Robert McAlkich
8698 Community Blvd
Warren, MI 48093

**Reference:** 513383F02
1610 Spencer Rd SE, Kalkaska, MI 49646-9666

**Trott Law, P.C. is a debt collector.** We are trying to collect a debt that is owed to NewRez, LLC dba Shellpoint Mortgage Servicing. We will use any information you give us to help collect the debt.

## Our information shows:

You have a mortgage serviced by NewRez, LLC dba Shellpoint Mortgage Servicing with account number 9716285110.

See the enclosed periodic statement for an itemization of the debt.

| | | |
|---|---|---|
| **Total amount of the debt now:** | $ | 321,931.24 |

An attorney has reviewed information supplied by our client in preparation of this letter.

This notice is being provided pursuant to 12 CFR 1006.34. To the extent the mortgage debt has been discharged in bankruptcy or is currently subject to a bankruptcy automatic stay this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against property and is not a demand for payment or an attempt to impose personal liability.

## How can you dispute the debt?

- **Call or write to us by January 18, 2024,** to dispute all or part of the debt. If you do not, we will assume that our information is correct

- **If you write to us by January 18, 2024,** we must stop collection on any amount you dispute until we send you information that verifies the debt. You may use the form below or write to us without the form. You may also include supporting documents

## What else can you do?

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by January 18, 2024, we must stop collection until we send you that information. You may use the form below or write to us without the form.

- **Go to www.cfpb.gov/debt-collection** to learn more about your rights under federal law. For instance you have the right to stop or limit how we contact you

---

## How do you want to respond?

**Mail this form to:**

Trott Law, P.C.
31440 Northwestern Hwy Ste. 145
Farmington Hills, MI 48334-5422

Robert McAlkich
1610 Spencer Rd SE
Kalkaska, MI 49646-9666

*Check all that apply:*

☐ **I want to dispute the debt because I think:**

    ☐ This is not my debt.
    ☐ The amount is wrong.
    ☐ Other (please describe on reverse or attach additional information)

☐ **I want you to send me the name and address of the original creditor.**

Case No. 1:26-cv-468 | EX-050 | McALKICH—000087 | Packet 87 of 132

UNOFFICIAL COPY

**Team H - Robert McAlkich**

Notice of Foreclosure by Advertisement

Notice is given under section 3212 of the revised judicature act of 1961, 1961 PA 236, MCL 600.3212, that the following mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at a public auction sale to the highest bidder for cash or cashier's check at the place of holding the circuit court in Kalkaska County, starting promptly at 11:00 AM, on February 15, 2024. The amount due on the mortgage may be greater on the day of sale. Placing the highest bid at the sale does not automatically entitle the purchaser to free and clear ownership of the property. A potential purchaser is encouraged to contact the county register of deeds office or a title insurance company, either of which may charge a fee for this information:

Name(s) of the mortgagor(s):    Robert Mcalkich, an unmarried man
Original Mortgagee:    Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for lender and lender's successors and/or assigns
Foreclosing Assignee (if any):  NewRez LLC d/b/a Shellpoint Mortgage Servicing
Date of Mortgage:    April 14, 2021
Date of Mortgage Recording:    April 19, 2021
Amount claimed due on date of notice: $322,534.42
Description of the mortgaged premises: Situated in Township of Orange, Kalkaska County, Michigan, and described as: PARCEL 2: A part of the West 1/2 of the Northeast 1/4 of Section 22, Town 26 North, Range 7 West described as:
Commencing at the North 1/4 corner of said Section 22; thence along the North line of said Section 22, South 89 degrees 30 minutes 27 seconds East 397.75 feet to the Point of Beginning; thence continuing along the North line of said Section 22, South 89 degrees 30 minutes 27 seconds East 190.00 feet; thence South 00 degrees 37 minutes 16 seconds West 217.31 feet; thence South 89 degrees 22 minutes 44 seconds East 13.70 feet; thence South 00 degrees 37 minutes 16 seconds West 27.86 feet; thence North 89 degrees 22 minutes 44 seconds West 13.70 feet; thence South 00 degrees 37 minutes 16 seconds West 354.84 feet; thence North 89 degrees 30 minutes 27 seconds West, 190.00 feet; thence North 00 degrees 37 minutes 16 seconds East, 600.00 feet to the Point of Beginning.
Subject to the right of way of Spencer Road over the North 33 feet thereof. Also, Subject to and together with Access Easement 'A' described as: A 33 feet wide access easement over a part of the West 1/2 of the Northeast 1/4 of Section 22, Town 26 North, Range 7 West, being 16.5 feet on each side of and coincident to the following described centerline: Commencing at the North 1/4 corner of said Section 22, thence along the North line of said Section 22, South 89 degrees 30 minutes 27 seconds East 397.75 feet to the Point of Beginning; thence South 00 degrees 37 minutes 16 seconds West 64.81 feet to the Point of Ending. The Sidelines of which to lengthen or shorten to begin on the North line of said Section 22.
Common street address (if any): 1610 Spencer Rd SE, Kalkaska, MI 49646-9666
The redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance with MCL 600.3241a; or, if the subject real property is used for agricultural purposes as defined by MCL 600.3240(16).
If the property is sold at foreclosure sale under Chapter 32 of the Revised Judicature Act of 1961, pursuant to MCL 600.3278 the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period.
Attention homeowner: If you are a military service member on active duty, if your period of active duty has concluded less than 90 days ago, or if you have been ordered to active duty, please contact the attorney for the party foreclosing the mortgage at the telephone number stated in this notice.
This notice is from a debt collector.
Date of notice: January 4, 2024
Trott Law, P.C.
31440 Northwestern Hwy, Suite 145
Farmington Hills, MI 48334
(248) 642-2515
(01-04)(01-25)

Rashelle L. Wirtz
Notary Public - State of Michigan
County of Kalkaska
My Commission Exp. 3-13-24
Acting in the County of Kalkaska

**EVIDENCE OF SALE**

(Affidavit of Posting)

STATE OF MICHIGAN,

COUNTY OF Kalkaska } ss
(County Notarizing In)

FARRIER being duly sworn,
(Print Name)

deposes and says that on the __12__ day

of __JAN__, 20 24, he/she posted

a true copy of the Notice annexed to the affidavit

of Publication hereto attached in a conspicuous

place upon the premises described in said Notice by

attaching the same in a secure manner to _____

REMAINING AREA
(Place of Posting)

(Signature)     FARRIER
                (Print Name)

Subscribed and Sworn To Before Me This

__12__ Day of January, 20 24

Rashelle Wirtz
NOTARY PUBLIC (Signature)     (Print Name)

Kalkaska County, Michigan

My Commission Expires

March 13     20 24

Acting in

Kalkaska County, Michigan

CHECK IF     ☐ Vacant
☐ Multi-Unit     ☐ Upper Unit     ☐ Lower Unit
☐ Multi-Address     ☐ Unit 1     ☐ Unit 2
☐ Condo     ☐ Unit A     ☐ Unit B
☐ Mobile/Manufactured Home     ☒ No Dwelling

Attorney Office:  Trott Law P.C.
Attorney File#:    513383F02
Notice#:    1518750

NON-MILITARY AFFIDAVIT
McAlkich, Robert

Trott# 513383F02

STATE OF MICHIGAN
                                    SS.
COUNTY OF OAKLAND

The undersigned, being first duly sworn, deposes and says that upon investigation she/he is informed and believes that no borrower(s) are currently in active military service of the United States, and there are no known tenant(s) to the best of affiant's knowledge.

_____
Heide M. Myszak Attorney, Trott Law, PC

Signed and sworn to before me in OAKLAND County, MICHIGAN, on this ___ day of February 2024 by Heide M. Myszak. Attorney, Trott Law, PC

_____
Nicole Rickman, Notary public
State of Michigan, County of Macomb
My commission expires August 1, 2029
Acting in the County of Oakland

EVIDENCE OF SALE (Affidavit of Auctioneer)
STATE OF MICHIGAN
                                    SS.
COUNTY OF KALKASKA

_Kevin Schaul_____
, being duly sworn, deposes and says that she/he is a Deputy Sheriff of said Kalkaska; that she/he acted as Auctioneer, and made the sale as described in the annexed Deed pursuant to the annexed printed notice: that said sale was opened at 11:00 AM on the 15th day of February, A.D. 2024, at the Front door of the Courthouse, Kalkaska County, Michigan, that being the place of holding the Circuit Court in said Kalkaska County; that the highest bid for the lands and tenements therein described was Twenty-Five Thousand Five Hundred and 00/100 Dollars dollars $25,500.00 made by NewRez LLC d/b/a Shellpoint Mortgage Servicing; that said sale was in all respects open and fair; and that she/he did strike off and sell lands and tenements to said bidders, which purchased the said lands and tenements fairly, and in good faith, as deponent verily believes. * Jennifer Hood 4377 Ground Pine Trail Tracrse City MI 49686

I DO HEREBY CERTIFY that the last day to redeem is August 15, 2024, after which the within Sheriff's Deed will become operative, unless determined abandoned in accordance with MCLA 600.3241a, or unless redeemed according to the law, in such case made and provided.

_____ Kevin schaub

Deputy Sheriff in and for Kalkaska County, Michigan

Signed and sworn to before me in Kalkaska County, Michigan, on **2/15/24**

_____ Rashelle l Wirtz
Notary Public, _Kalkaska_ County, Michigan
My Commission Expires:
Acting in the county of Kalkaska

> Rashelle L. Wirtz
> Notary Public - State of Michigan
> County of Kalkaska
> My Commission Exp. 3-13-24
> Acting in the County of Kalkaska

Prepared By:
Heide M. Myszak (P56449)
Trott Law, P.C.
31440 Northwestern Hwy Ste. 145
Farmington Hills, MI 48334-5422
Trott # 513383F02

ATTN REGISTER OF DEEDS: Please send all Redemption notifications and funds collected in your office to NewRez LLC d/b/a Shellpoint Mortgage Servicing c/o Trott Law, P.C., Post-Sale Unit, 31440 Northwestern Hwy Ste. 145, Farmington Hills, MI 48334-5422.

ATTN PURCHASERS: This sale may be rescinded by the foreclosing mortgagee. In that event, your damages, if any, shall be limited solely to the return of the bid amount tendered at sale, plus interest. Please be advised that all 3rd party bidders are responsible for preparing and recording the Sheriff's Deed. TROTT LAW, P.C. Hereby expressly disclaims all liability relating to the foreclosure, preparation and recording of the Sheriff Deed.

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-075

RFI Response Packet Excerpts

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



**shellpoint**



S-SFRECS20  L-150  R-119
PITC7R00200370 - 756795074 I00740
ROBERT MCALKICH
8698 COMMUNITY BLVD.
WARREN MI 48093-6707

| CONTACT INFORMATION | |
| --- | --- |
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 8:00AM-9:00PM |
| | Saturday: 10:00AM-2:00PM |
| Phone Number: | 866-317-2347 |
| Fax: | 866-467-1137 |
| Website: | www.shellpointmtg.com |

10/17/2023

Dear Homeowner,

This letter is in response to your recent inquiry regarding the above referenced account serviced by Shellpoint Mortgage Servicing on behalf of NewRez LLC d/b/a Shellpoint Mortgage Servicing, the owner of your loan. Their address is

1100 Virginia Dr.
Suite 125
Fort Washington PA 19034

We are working to gather the requested information and will forward it to you as soon as possible.

**We're here to help.** It's our privilege to be your mortgage servicer, and we're committed to providing you with the best possible service. If you have any questions or need assistance, please contact us at 866-317-2347.

**¿Hablas español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-317-2347.

Sincerely,

*Customer Care Team*

Shellpoint Mortgage Servicing

SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOU

PLTF_DISC_000494

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



S-SFRECS20 L-156 R-119
PIY28B00306377 - 760136991 I24786
ROBERT MCALKICH
8698 COMMUNITY BLVD.
WARREN MI 48093-6707

# shellpoint

**Phone Number:** 866-317-2347
**Fax:** 866-467-1137
www.shellpointmtg.com
**Mon - Thurs:** 8:00AM-9:00PM
**Fri:** 8:00AM-9:00PM
**Sat:** 10:00AM-2:00PM

| Loan Number: | 9716285110 |
| --- | --- |
| Principal Balance: | S296,453.67 |
| Property: | 1610 SPENCER RD SE KALKASKA, MI 49646 |

11/10/2023

Dear ROBERT MCALKICH:

Shellpoint Mortgage Servicing ("Shellpoint") is in receipt of your correspondence regarding the above referenced loan.

Due to the complex nature of the matter, Shellpoint respectfully requests additional time to respond fully to your inquiry. We would like to apologize for any inconvenience experienced regarding this issue. Shellpoint is working diligently to resolve your concerns and will respond within the allotted time frame. We appreciate your patience in this matter.

If you have any other questions or concerns, please contact Customer Service at 866-317-2347.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al numero 866-317-2347.

Sincerely,
Shellpoint Mortgage Servicing
866-317-2347

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOU**

PLTF_DISC_000495

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



**shellpoint**



S-SFRECS20 L-091 R-106
PIYO9P00201521 - 760404641 I04800
ROBERT MCALKICH
8698 COMMUNITY BLVD.
WARREN MI 48093-6707

| CONTACT INFORMATION | |
| --- | --- |
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 8:00AM-9:00PM |
| | Saturday: 8:00AM-1:00PM |
| Phone Number: | 866-825-2174 |
| Fax: | 866-467-1187 |
| Website: | www.shellpointmtg.com |

Loan Number: ████5110
Property Address: 1610 SPENCER RD SE
KALKASKA, MI 49646

11/14/2023

Dear Homeowner,

A new Single Point of Contact (SPOC) has been assigned to assist you through the remainder of the loss mitigation process concerning your mortgage loan. Your SPOC will perform an evaluation of your financial condition and determine your eligibility for all alternatives that may be applicable for this account.

### Additional Resources
**For additional information about preventing foreclosure, avoiding fraud scams, and accessing approved counseling at no cost to you**

- Visit Shellpoint's web site at www.shellpointmtg.com.
- Contact HUD-approved counselors who are available to provide you with the information and assistance you may need. You can use the search tool at http://www.hud.gov/offices/hsg/sfh/hcc/fc/ or call 1-800-569-4287 to find a counseling agency in your area that can offer free foreclosure prevention services. Additionally, the Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish. Other languages are available by appointment. Certified counselors can be reached by calling 888-995-HOPE ™ (4673) or 800-877-8339 with TTY device.

For future communications regarding the status of your loan or your application for loss mitigation, you can visit our Borrower Web Portal at www.shellpointmtg.com to apply for assistance, upload application documents, or contact us through our Secure Message Center. You can also reach our SPOC department at 866-825-2174. Documents can also be faxed to us at 866-467-1187. Please reference your loan number when contacting us regarding this request.

**We're here to help.** It's our privilege to be your mortgage servicer, and we're committed to providing you with the best possible service. If you have any questions or need assistance, please contact us at 866-825-2174.

**¿Hablas español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-825-2174.

Sincerely,

Loss Mitigation Department
Shellpoint Mortgage Servicing

SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOU

PLTF_DISC_000496

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



# shellpoint.



S-SFRECS20  L-150  R-119
PKYMGT00I01072 -804455261 I02144
ROBERT MCALKICH
8698 COMMUNITY BLVD.
WARREN MI 48093-6707

| CONTACT INFORMATION | |
| --- | --- |
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 8:00AM-9:00PM |
| | Saturday: 10:00AM-2:00PM |
| Phone Number: | 866-317-2347 |
| Fax: | 866-467-1137 |
| Website: | www.shellpointmtg.com |

Loan Number:        ▓▓▓5110
Property Address: 1610 SPENCER RD SE
                  KALKASKA, MI 49646

11/18/2024

Dear Homeowner,

This letter is to acknowledge your recent inquiry regarding the above referenced loan.

We are working to gather the requested information and will forward it to you as soon as possible.

In the event you are seeking creditor information, the owner of your loan is NewRez LLC d/b/a Shellpoint Mortgage Servicing, and their address is:

601 Office Center Drive
Suite 100
Fort Washington PA 19034

**We're here to help.** It's our privilege to be your mortgage servicer, and we're committed to providing you with the best possible service. If you have any questions or need assistance, please contact us at 866-317-2347.

**¿Hablas español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-317-2347.

Sincerely,

***Customer Care Team***

Shellpoint Mortgage Servicing

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



# shellpoint.



S-SFRECS20 L-150 R-119
PKYU4M00200659 -804701745 I01318
**ROBERT MCALKICH**
**8698 COMMUNITY BLVD.**
**WARREN MI 48093-6707**

| CONTACT INFORMATION | |
|---|---|
| **Correspondence:** | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| **Business Hours:** | **Monday - Friday:** 8:00AM-9:00PM |
| | **Saturday:** 10:00AM-2:00PM |
| **Phone Number:** | 866-317-2347 |
| **Fax:** | 866-467-1137 |
| **Website:** | www.shellpointmtg.com |

Loan Number: █████5110
Property Address: 1610 SPENCER RD SE
KALKASKA, MI 49646

11/19/2024

Dear Homeowner,

This letter is to acknowledge your recent inquiry regarding the above referenced loan.

We are working to gather the requested information and will forward it to you as soon as possible.

In the event you are seeking creditor information, the owner of your loan is NewRez LLC d/b/a Shellpoint Mortgage Servicing, and their address is:

601 Office Center Drive
Suite 100
Fort Washington PA 19034

**We're here to help.** It's our privilege to be your mortgage servicer, and we're committed to providing you with the best possible service. If you have any questions or need assistance, please contact us at 866-317-2347.

**¿Hablas español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-317-2347.

Sincerely,

***Customer Care Team***

Shellpoint Mortgage Servicing

Newrez LLC dba Shellpoint Mortgage Servicing NMLS ID 3013

PLTF_DISC_000498



P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED





ıı·ıllıı·llıll·lı·lı·ıl·llı·lı·ıl·lıı·ıllıı·ıllıı·ıllı
S-SFRECS20  L-150  R-119
PKZAL300200634 -805057818 I01268
ROBERT MCALKICH
8698 COMMUNITY BLVD.
WARREN MI 48093-6707

**CONTACT INFORMATION**

**Correspondence:** P.O. Box 10826
Greenville, SC 29603-0826
**Business Hours:** Monday - Friday: 8:00AM-9:00PM
Saturday: 10:00AM-2:00PM
**Phone Number:** 866-317-2347
**Fax:** 866-467-1137
**Website:** www.shellpointmtg.com

Loan Number: ████5110
Property Address: 1610 SPENCER RD SE
KALKASKA, MI 49646

11/21/2024

Dear Homeowner,

This letter is to acknowledge your recent inquiry regarding the above referenced loan.

We are working to gather the requested information and will forward it to you as soon as possible.

In the event you are seeking creditor information, the owner of your loan is NewRez LLC d/b/a Shellpoint Mortgage Servicing, and their address is:

601 Office Center Drive
Suite 100
Fort Washington PA 19034

**We're here to help.** It's our privilege to be your mortgage servicer, and we're committed to providing you with the best possible service. If you have any questions or need assistance, please contact us at 866-317-2347

**¿Hablas español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-317-2347.

Sincerely,

*Customer Care Team*

Shellpoint Mortgage Servicing

Newrez LLC dba Shellpoint Mortgage Servicing NMLS ID 3013

PLTF_DISC_000499

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED

**shellpoint**



Phone Number: 866-317-2347
Fax: 866-467-1137
www.shellpointmtg.com
Mon - Thurs: 8:00AM-9:00PM
Fri: 8:00AM-9:00PM
Sat: 10:00AM-2:00PM

S-SFRECS20  L-156  R-119
PIY28B00306377 - 760136991 I24786
ROBERT MCALKICH
8698 COMMUNITY BLVD.
WARREN MI 48093-6707

| Loan Number: | 9716285110 |
|---|---|
| Principal Balance: | $296,453.67 |
| Property: | 1610 SPENCER RD SE KALKASKA, MI 49646 |

11/10/2023

Dear ROBERT MCALKICH:

Shellpoint Mortgage Servicing ("Shellpoint") is in receipt of your correspondence regarding the above referenced loan.

Due to the complex nature of the matter, Shellpoint respectfully requests additional time to respond fully to your inquiry. We would like to apologize for any inconvenience experienced regarding this issue. Shellpoint is working diligently to resolve your concerns and will respond within the allotted time frame. We appreciate your patience in this matter.

If you have any other questions or concerns, please contact Customer Service at 866-317-2347.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-317-2347.

Sincerely,
Shellpoint Mortgage Servicing
866-317-2347

SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOU

PLTF_DISC_000503

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



**shellpoint.**

S-SFRECS20  L-156  R-119
PL2CAR00219307 -806972981 I75496
ROBERT MCALKICH
8698 COMMUNITY BLVD.
WARREN MI 48093-6707



| CONTACT INFORMATION | |
| --- | --- |
| **Correspondence:** | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| **Business Hours:** | Monday - Friday: 8:00AM-9:00PM |
| | Saturday: 10:00AM-2:00PM |
| **Phone Number:** | 866-317-2347 |
| **Fax:** | 866-467-1137 |
| **Website:** | www.shellpointmtg.com |

Loan Number:        ████████110
Principal Balance:  $0.00
Property Address:  1610 SPENCER RD SE
                            KALKASKA, MI 49646

12/09/2024

Dear ROBERT MCALKICH:

Shellpoint Mortgage Servicing ("Shellpoint") is in receipt of your correspondence regarding the above referenced loan.

Due to the complex nature of the matter, Shellpoint respectfully requests additional time to respond fully to your inquiry. We would like to apologize for any inconvenience experienced regarding this issue. Shellpoint is working diligently to resolve your concerns and will respond within the allotted time frame. We appreciate your patience in this matter.

If you have any other questions or concerns, please contact Customer Service at 866-317-2347.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-317-2347.

Sincerely,
Shellpoint Mortgage Servicing
866-317-2347

Newrez LLC dba Shellpoint Mortgage Servicing NMLS ID 3013
156 119 Loan Number: 9716285110 Version: 07052024

PLTF_DISC_000504

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



# shellpoint.

S-SFRECS20 L-156 R-119
PL2JXG00210794 -807100939 I40940
ROBERT MCALKICH
8698 COMMUNITY BLVD.
WARREN MI 48093-6707

| CONTACT INFORMATION | |
|---|---|
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 8:00AM-9:00PM |
| | Saturday: 10:00AM-2:00PM |
| Phone Number: | 866-317-2347 |
| Fax: | 866-467-1137 |
| Website: | www.shellpointmtg.com |

Loan Number: 9716285110
Principal Balance: $0.00
Property Address: 1610 SPENCER RD SE
KALKASKA, MI 49646

12/10/2024

Dear ROBERT MCALKICH:

Shellpoint Mortgage Servicing ("Shellpoint") is in receipt of your correspondence regarding the above referenced loan.

Due to the complex nature of the matter, Shellpoint respectfully requests additional time to respond fully to your inquiry. We would like to apologize for any inconvenience experienced regarding this issue. Shellpoint is working diligently to resolve your concerns and will respond within the allotted time frame. We appreciate your patience in this matter.

If you have any other questions or concerns, please contact Customer Service at 866-317-2347.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-317-2347.

Sincerely,
Shellpoint Mortgage Servicing
866-317-2347

Newrez LLC dba Shellpoint Mortgage Servicing NMLS ID 3013
156 119 Loan Number: 9716285110 Version: 07052024

PLTF_DISC_000505



P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED

**shellpoint**.



‖‧‖‧‖‧‖‧‖‧‖‧‖‧‧‖‧‖‧‖‧‖‧‖‧‖‧‖‧‖‧‖‧‖‧‖‧‖‧‖‧‖
S-SFRECS20  L-150  R-119
PKYMGT00I01072 -804455261 I02144
**ROBERT MCALKICH**
8698 COMMUNITY BLVD.
WARREN MI 48093-6707

| CONTACT INFORMATION | |
| --- | --- |
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 8.00AM-9.00PM |
| | Saturday: 10:00AM-2:00PM |
| Phone Number: | 866-317-2347 |
| Fax: | 866-467-1137 |
| Website: | www.shellpointmtg.com |

Loan Number:        ████6110
Property Address: 1610 SPENCER RD SE
                            KALKASKA, MI 49646

11/18/2024

Dear Homeowner,

This letter is to acknowledge your recent inquiry regarding the above referenced loan.

We are working to gather the requested information and will forward it to you as soon as possible

In the event you are seeking creditor information, the owner of your loan is NewRez LLC d/b/a Shellpoint Mortgage Servicing, and their address is:

601 Office Center Drive
Suite 100
Fort Washington PA 19034

**We're here to help.** It's our privilege to be your mortgage servicer, and we're committed to providing you with the best possible service. If you have any questions or need assistance, please contact us at 866-317-2347

**¿Hablas español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-317-2347.

Sincerely,

*Customer Care Team*

Shellpoint Mortgage Servicing

Newrez LLC dba Shellpoint Mortgage Servicing NMLS ID 3013

PLTF_DISC_000509

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-093

Shellpoint Credit Reporting Packet

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.



**10:51**

◀ Edge

← Account Details

## NEWREZ-SHELLPOINT

# $325,751

CURRENT BALANCE

DATE REPORTED JAN 31, 2024

STATUS

| | |
|---|---|
| Payment Status | 120 Days Late |
| Account Status | Derogatory |
| Amount Past Due | $43,936 |

ACCOUNT DETAILS

## NEWREZ-SHELLPOINT

| | |
|---|---|
| Bureau Name | NEWREZ-SHELLPOINT |
| Account Type | FMHA real estate mortgage |
| Responsibility | Individual |
| Age of Account | 2 Years 11 Months |
| Original Loan Amount | $302,929 |

PAYMENT DETAILS



📣 See something wrong?

🏠 Home   Improve   Activity   Alerts   For You

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-097

Tesla Offer Excerpts - October 31 2024

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.



**Oct 31, 2023**
**Delivered via AdobeSign**

Robert Mcalkich
8698 community Blvd
Warren Michigan 48093
United States of America

Dear Robert,

Tesla, Inc. ("Tesla" or the "Company") is pleased to offer you the non-exempt, hourly position of Tool and Die Specialist on the terms set forth below. As a Tool and Die Specialist, you will perform the duties customarily associated with this position. You will report to Mohan Kayambu. Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your rate of pay will be $43.2 per hour, subject to standard payroll deductions and withholdings, in accordance with the applicable pay schedule. As a non-exempt employee, you may be eligible to earn overtime and you will be entitled to meal and rest periods (per the laws of the state where you work). You will be eligible for paid time off according to Tesla's standard policy. Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire. Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla. Of course, Tesla reserves the right to modify your compensation and benefits from time to time, without advance notice, as it deems necessary.
Based on your anticipated assignment, you will be eligible for a premium/shift differential. You will be paid a 10% premium/shift differential pay in addition to your base pay. Should your work assignments, including work shift and/or location, change you may no longer be eligible for the additional pay. Tesla reserves the right to evaluate premium and differential pay as needed and any changes to, or removal of, this pay you will be provided advance notice of the change.
You will receive more information on your assigned shift upon start. Shifts may vary by work group, and you may be assigned to work a condensed workweek (also known as an alternative workweek, for example, working 12 hours per day, either three or four days per week) or to a night shift. You will be paid overtime in accordance with state law.

Tesla offers a competitive benefits package described below:

Grant: Should you decide to accept the position, we will recommend to Tesla's Board of Directors, or committee thereof, that the Company grant you an award with the value of $25,000.00. You may select whether you want to receive this award in the form of Cash or Restricted Stock Units ("RSUs"), which will vest as described below. You will be provided the option to make your election after you have commenced employment and will have until the ninth calendar day of the month following your start date finalize your election. If you do not make an election by this deadline, then your award will default to Cash.
Cash awards represent an opportunity for you to receive cash payments in a series of installments, subject to applicable taxes and withholdings, as a bonus for your continued employment with the Company. If you select to receive your award in Cash, the Cash shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary of the vesting start date (the first March 5, June 5, September 5 or December 5, as the case may be, after the end of the month in which you were hired and six and twenty-five hundredths percent (6.25%) shall vest each quarter thereafter for the following twelve quarters, in each case subject to your continuing eligibility through the

PLTF_DISC_000817

Employment at Tesla is conditioned upon, and thus subject to, pre-employment screenings for employment verification, background, and reference checks. Candidates for safety-sensitive positions and for work on certain projects, as well as employees working in those positions, are also subject to pre-employment drug and alcohol screening, and random and other (such as reasonable suspicion and/or post-accident) drug and alcohol screening during the course of employment at the Company. Certain positions may also require successful completion of a pre-employment physical examination, which is designed solely to determine your physical ability to safely perform the essential functions of the job with or without reasonable accommodation. The Company reserves the right to periodically conduct background checks throughout any employee's tenure in accordance with the Fair Credit Reporting Act and applicable federal, state and local laws, consistent with business need. Your employment, therefore, is contingent upon a clearance of a background investigation, reference check, drug screen and/or physical examination, as applicable. In limited cases due to business necessity, the Company may permit a candidate to start work, contingent upon the successful completion or results of a background check and/or reference check (aka "contingent start"), in which case the individual's employment may be subject to termination if the Company receives negative information or results in connection with a background check or reference check, even where employment has conditionally begun pending the background or reference check results.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to Nov 20, 2023 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,

Tesla, Inc.

*(signature)*

Elon Musk

Accepted by:

Signature: *(signature)*

Name: Robert Mcalkich

Date: Nov 2, 2023

Start Date: Nov 27, 2023

PLTF_DISC_000820

**NOTICE TO EMPLOYEE**
**Labor Code section 2810.5**

**EMPLOYEE**

Employee Name: Robert Mcalkich
Start Date: Nov 27, 2023

**EMPLOYER**

Legal Name of Hiring Employer: Tesla, Inc.
Is hiring employer a staffing agency/business (e.g., Temporary Services Agency; Employee Leasing Company; or Professional Employer Organization [PEO])? □ Yes  x No

Physical Address of Hiring Employer's Main Office:
 3500 Deer Creek Rd. Palo Alto, CA 94304

Hiring Employer's Telephone Number: 650-681-5100

**WAGE INFORMATION**

Rate(s) of Pay: $43.2 Overtime Rate(s) of Pay: 1.5x base pay rate or 2x base pay rate – see OT policy for more information

Rate by (check box):  x Hour  □ Shift  □ Day  □ Week  □ Salary  □ Piece rate  □ Commission □ Other (provide specifics):

Does a written agreement exist providing the rate(s) of pay?  (check box)  x Yes  □ No
  If yes, are all rate(s) of pay and bases thereof contained in that written agreement?  x Yes  □ No
Allowances, if any, claimed as part of minimum wage (including meal or lodging allowances):

(If the employee has signed the acknowledgment of receipt below, it does not constitute a "voluntary written agreement" as required under the law between the employer and employee in order to credit any meals or lodging against the minimum wage. Any such voluntary written agreement must be evidenced by a separate document.)

Regular Payday: Every other Friday

**WORKERS' COMPENSATION**

Insurance Carrier's Name: Zurich NA
Address: 1400 American Lane, Schaumburg, IL 60196
Telephone Number: 1.800.987.3373
Policy No.: MA: WC 0172150 00 All Other States WC 0172149 00

ACKNOWLEDGMENT OF RECEIPT

Tesla, Inc.
(PRINT NAME of Employer representative)

Tesla, Inc.
(SIGNATURE of Employer representative)

Date: Oct 31, 2023

PLTF_DISC_000822

**OVERVIEW OF RELOCATION BENEFITS**
North America Domestic Stipend

Robert Mcalkich
8698 community Blvd
Warren, Michigan 48093

Tesla, Inc.'s (Tesla) relocation program is designed to support you during the relocation process. Tesla will provide a Relocation Stipend to help offset relocation expenses. The Relocation Stipend is designed to reduce the record-keeping requirements for your expenses, alleviate your administrative burden, and provide you with flexibility for your relocation.

PROGRAM INFORMATION

• The stipend is yours to use as you wish, and no accounting to Tesla is required; however, you may want to keep receipts for your personal tax records. If in doubt, keep your receipts and talk to a tax advisor.
• In the event you have any challenges with your relocation, please contact the Tesla Relocation Team at relocation@tesla.com.
• Tesla has the sole right at any time to revise, amend, or discontinue this program. This program shall not be considered or construed as an employment contract and does not constitute a guarantee of employment for any minimum or specified period of time. Tesla's decisions regarding the application and interpretation of the relocation benefits are final.

**RELOCATION STIPEND**
- Relocation Stipend Amount: 12,000.00 USD
- Grossed-up for taxes
- Payment made by Tesla Payroll within a month of your move date

**REPAYMENT AGREEMENT**
In consideration of the financial investment and commitment Tesla, Inc. (together with its divisions and subsidiaries, the "Company") is making in the Individual, the Company and the Individual enter into this Relocation Services Repayment Agreement for situations where the Individual (i) voluntarily terminates employment with the Company, for any reason; (ii) is terminated for misconduct; (iii) does not commence employment with the Company after accepting relocation benefits; or (iv) does not relocate after accepting relocation benefits.

As a condition of the Individual's eligibility for the relocation stipend from the Company, the Individual hereby agrees to the following terms of this Relocation Services Repayment Agreement (the "Agreement"):

1.  If, within twelve (12) months of the incurred expense date related to the relocation benefit(s), the Individual (i) voluntarily terminates employment with the Company, for any reason; (ii) is terminated from the Company for misconduct; (iii) does not commence employment with Company after accepting relocation benefits, or (iv) does not relocate after accepting relocation benefits, the Individual agrees to reimburse the Company promptly, upon notification, the prorated amount of relocation benefits received as outlined in the schedule below:
    1.  Leaving the Company within 6 months from the incurred expense date – 100% reimbursement to the Company
    2.  Leaving the Company between 6 months and 1 day to 12 months from the incurred expense date – 50% reimbursement to the Company
2.  2. This repayment provision does not constitute a contract of employment, a guarantee of employment, a promise of employment for a stated period of time, nor does it alter the terms of the offer letter (US employees) you received or employment contract (non-US employees) you may have with the Tesla entity (Tesla or a subsidiary or affiliate).

**DECLARATION**
Please sign below to acknowledge acceptance of Tesla, Inc.'s Relocation Benefits and Repayment

PLTF_DISC_000824

its rights or obligations under this Agreement.

11.4    No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right.

11.5    This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous discussions or agreements between us regarding such subject matter. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged.

11.6    Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement. This Agreement shall be effective as of the first day of my employment with the Company.

Dated:  Nov 2, 2023

Signature: _Robert McalkIch_

Name: Robert Mcalkich

PLTF_DISC_000830

The Parties agree that Tesla is engaged in transactions involving interstate commerce. The Parties understand and agree that this is an agreement to arbitrate under the Federal Arbitration Act and that enforceability of this Agreement will be decided in accordance with the Federal Arbitration Act.

ARBITRATOR AND ATTORNEYS' FEES

Tesla agrees to pay the fees charged by the arbitrator for the arbitration fees that exceed those which would be required if the dispute had been filed in a court of law.

Tesla and Employee shall each pay their own attorneys' fees, and the arbitrator will not have authority to award attorneys' fees unless a statute or contract at issue in the dispute authorizes the award of attorneys' fees to the prevailing party, in which case the arbitrator shall have the authority to make an award of attorneys' fees as required or permitted by applicable law.

SEVERABILITY

The Parties understand and agree that if a court or arbitrator invalidates or refuses to enforce any term or portion of this Agreement, the remainder of this Agreement shall not be affected by such invalidity or unenforceability but shall remain in full force and effect, except that if any portion of the class or collective action waiver is found invalid or unenforceable, in no event shall a court or arbitrator order arbitration on a class, representative, or collective basis. Instead, if the class or collective action waiver is found unenforceable, the class, representative, or collective claim shall be litigated in Court.

MISCELLANEOUS

This Agreement will survive the termination of Employee's employment with Tesla.

The Parties understand and agree that this Agreement contains the complete agreement between Tesla and Employee regarding the subject of arbitration of disputes. This Agreement may only be modified in a writing that is offered by one of the Parties and accepted by the other Party.

AGREEMENT AND ACCEPTANCE

By executing this Agreement (by electronic means or otherwise), the parties intend to be bound by the terms of this Agreement as of the date set forth below.

Tesla, Inc.

Elon Musk

**Accepted by:**

Signature:

Name: Robert Mcalkich

Date: Nov 2, 2023

PLTF_DISC_000834

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-141

TransUnion Dispute Results / Credit Reporting Exhibit as cited in Complaint

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.



# Your Dispute Results

Report Created On: 12/28/2025
File Identification Number: 000395991041
Provided by TransUnion Consumer Relations

## Your Investigation Results

Feedback

INFORMATION UPDATED: In response to your request, a change was made to this item(s).

ADDRESS INFORMATION: This section of your report was updated as follows:

| | |
|---|---|
| **Current Address** | 8698 COMMUNITY BLVD WARREN, MI 48093-6707 |
| **Previous Address(es)** | 1610 SPENCER RD SE KALKASKA, MI 49646-9666 |

We understand that recently som... ...eport did not seem right to you. We take this matter seriously, and we want to make sure your TransUnion credit report is accurate. It's our commitment to you.

**Chat Now**

Case No. 1:26-cv-468 | EX-141 | McALKICH—000111 | Packet 111 of 132

Our investigation of the dispute you submitted is now complete. After a review of your dispute and any provided documents, we took one or more of the following action(s):

1. Updated your credit report based on the information you provided; OR

2. Determined that the information you disputed does not appear on your credit file or already shows the requested status; OR

3. Determined that the lender had previously verified the reported information. If any of the items you disputed were previously verified, a separate communication was sent to you listing those items along with the lender's contact information; OR

4. Asked the lender reporting the information you disputed to do all of the following:

   - Review relevant information we sent them, including any provided documents

   - Investigate your dispute and verify whether the information they report is accurate

   - Provide us a response to your dispute and update any other information

   - Update their records and systems, if necessary

Should you wish to receive the above description of the procedures we used to investigate your dispute in a separate communication for your records, please contact TransUnion.

Your dispute is important. You will see your detailed investigation results above, including the business name and contact details of the source of the information. Please review the results carefully. To review a full copy of your current credit report, please go to transunion.com/fullreport and login using the same username and password you use on this site. Then follow the order process to request a free disclosure of your full credit report.

## How to Read Your Investigation Results

You will see that, for each disputed item, a summary explanation is shown above it, followed by a brief paragraph describing the results of our investigation, followed by a view of how the item appears in your updated credit report. Please note any changes we made to personal information (name, address, employment, SSN, date of birth) will appear at the end of your investigation results.

Case No. 1:26-cv-468 | EX-141 | McALKICH—000112 | Packet 112 of 132

**If our investigation has not resolved your dispute, here's what you can do next:**

- **Add a consumer statement to your credit report.** A consumer statement is your explanation of why you disagree with a certain item on your credit report. Any lender who pulls your credit report will be able to see your consumer statement. Please note, if you include medical information in your consumer statement, you are allowing TransUnion to include that in any credit report we issue on your behalf.

- **Dispute directly with the company that reported the information to us.** If you want changes made to information found on your credit report, you can dispute with the company that reported it using the contact information listed for that lender on the Credit Report tab.

- **Provide us other information or documents about your dispute.** If you have new information about the change you requested (for example, documents that directly relate to the information you are disputing), please visit www.transunion.com/dispute and let us know you are filing a repeat dispute.

- **File a complaint** about the company reporting the account or about TransUnion with the Consumer Financial Protection Bureau (https://www.consumerfinance.gov/complaint/ ) or with your State's Attorney General's office.

If there has been a change to your credit report as a result of our investigation, or if you have added a statement to your report, **you may ask TransUnion to send an updated credit report to those who have received your report within the last 2 years for employment purposes or within the last 6 months (or 1 year, where applicable) for any other purpose.**

## A Note on Inquiries

An inquiry is posted on your credit report to notify you that a company has requested your report. Companies can only request a credit report for a legitimate business reason (called permissible purpose). Examples of permissible purpose include: credit transactions, employment consideration, review or collection of an existing account or other legitimate business need, insurance underwriting, government licensing, rental application or court order. Inquiries stay on your credit report for up to two (2) years. Each company that requested your credit report will be listed in the section on inquires, along with their contact information. Please note, a company doesn't always need your authorization to view your credit report as long as they have a permissible purpose. If you think an inquiry was made without a permissible

purpose, we strongly encourage you to reach out to the company who requested your credit report to find out whether they have opened an account in your name. The company can then investigate and if they determine that someone fraudulently applied for credit in your name, they can close that account and send us a letter requesting removal of the inquiry. If you have specific information that the inquiry was made fraudulently, you can also call our Fraud Victim Assistance department at 800-680-7289.

## Important Information About Your Rights Under the Law

To see your rights under federal law, visit https://www.transunion.com/legal/bill-of-rights/general. This page provides important details about your rights under the Fair Credit Reporting Act and applicable state laws that relate to the dispute process. Consumers who believe they may be possible victims of fraudulent activity may also visit www.transunion.com/fraud-alerts.

## Should You Wish to Contact TransUnion

Please have your TransUnion FILE IDENTIFICATION NUMBER available. Your unique FILE IDENTIFICATION NUMBER is **000395991041** and is also located at the top of this page.

### Online:

To dispute information contained in your credit report, please visit the Dispute Center or go to www.transunion.com/disputeonline

For more information please visit our main dispute FAQ on TransUnion.com or go to https://www.transunion.com/credit-disputes/credit-disputes-faq

### By Mail:

TransUnion
P. O. Box 2000
Chester, PA 19016-2000

## By Phone:

(800) 916-8800

You may contact us Monday - Friday 8 AM - 11 PM Eastern Time and Saturday - Sunday 8 AM - 5 PM Eastern Time, except on major holidays.

Want to review your credit report? Go to the Credit Report tab to see your credit report information as it appeared at the time we completed your dispute. Or visit transunion.com/fullreport and login using the same username and password you use on this website. Then follow the order process to request a free disclosure of your full credit report.

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-146

Equifax Dispute Results - December 22 2025

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

# EQUIFAX

## CREDIT FILE : December 22, 2025

## Confirmation # 5335531766

Dear ROBERT MCALKICH:

We are pleased to let you know that the results of the dispute you recently filed with Equifax are complete. Here are a few things to know about the process:

**Were changes made to my credit report and what actions were taken?**

Please see the following page(s) for more detailed information on your specific results.

If we were able to make changes to your credit report based on the information you provided, we have done so. Otherwise, we contacted the company reporting the information to Equifax for them to investigate your dispute.

In this situation:

- We request that the reporting company verify the accuracy of the information you disputed;

- We provide them with any relevant information and supporting documentation you provided us with the dispute to consider as part of the investigation; and

- We request that they send Equifax a response to your dispute and update their records and systems, as necessary

If your dispute involves a public record item, Equifax contacts a third party vendor to obtain the most recent status of the public record.

**How do I know that all of this is happening?**

When the reporting company replies to us, they certify that they have followed Equifax's instructions and the law, considered all information and documentation provided; and updated your information, as necessary

**What should I do if I do not agree with the results of the investigation?**

You have a few options

- You may add a statement of up to 100 words (200 words for Maine residents) to your credit report. If you provide a consumer statement that contains

(End of Report)
000000141-DISC

Page 1 of 8

5335531766-PY4-0fa9016a000001f6-12222025

P.O. Box 105518
Atlanta GA 30348

00000141- DISC
ROBERT MCALKICH
8698 COMMUNITY BLVD
WARREN, MI 48093-6707

medical information related to services provided or medical procedures, then you expressly consent to including this information in every credit report we issue about you.

- You may contact the company that reports the information to us and dispute it directly with them. If you would like written proof about your accounts (such as the original agreement), please contact your creditors directly.
- You may provide us additional information or documents (such as an identity theft report or a letter from the reporting company) about your dispute to help us resolve it by visiting our website https://www.equifax.com/personal/disputes. You may also mail your documents to PO Box 740256, Atlanta GA 30374-0256 or contact us by calling a Customer Representative at (888) EQUIFAX, (888) 378-4329.
- You may contact the Consumer Financial Protection Bureau or your State Attorney General's office about your issue or complaint against Equifax or the company reporting the information.

(End of Report)
000000141-DISC

Page 2 of 8

5335531766-PY4-0fa9016a00000116-12222025

Case No. 1:26-cv-468 | EX-146 | McALKICH—000118 | Packet 118 of 132



## What else should I know?

If there has been a change to your credit report based on your dispute, or if you add a consumer statement, you may request that Equifax send an updated report to companies who received your credit report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of California, Colorado, Maryland, New York and New Jersey residents).

Also, if you are interested, you may request a description of how the reinvestigation was conducted along with the business name, address and telephone number (if reasonably available) of the furnisher of your disputed information.

For frequently asked questions about your credit report and the dispute process, please visit Equifax at equifax.com/personal/help/.

As always, we thank you for contacting Equifax and the results of your dispute are on the pages following this letter.

## How should I read my dispute results?

To better assist you with understanding the results of your dispute, please review the information below:

- If an item states **"Deleted"**, we have removed it from your credit report and taken steps so it does not reappear.
- If an item states **"Verified as Reported"**, the reporting company has certified it is reporting accurately.
- If an item states **"Updated"**, we have updated one or more fields on the item based on information received from the reporting company.

Updated disputed account information only: **The information you disputed has been updated.**

Updated disputed account information. Additional account information was also updated: **The information you disputed has been updated as well as other information on this item.**

Disputed information accurate. Updated account information unrelated to the dispute: **The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated.**

Consumer's dispute not specific. Consumer information verified. Account information updated: **Information on your report has been updated.**

---

### The Results Of Our Reinvestigation

**Credit Account Information**
*(For your security, the last 4 digits of account number(s) have been replaced by *) (This section includes open and closed accounts reported by credit grantors)*

| Account History Status Code Descriptions | 1 : 30-59 Days Past Due 2 : 60-89 Days Past Due 3 : 90-119 Days Past Due 4 : 120-149 Days Past Due | 5 : 150-179 Days Past Due 6 : 180 or More Days Past Due G : Collection Account H : Foreclosure | J : Voluntary Surrender K : Repossession L : Charge Off |
|---|---|---|---|

>>> **We have researched the credit account. Account # - \*5110 The results are:** THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE HIGH CREDIT/CREDIT LIMIT IS BEING REPORTED CORRECTLY. ADDITIONAL INFORMATION HAS BEEN PROVIDED FROM THE ORIGINAL

0000137 03207 0000 0004 CECA/0007222529875 001 000000141

SOURCE REGARDING THIS ITEM. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *ADDITIONAL INFORMATION *CLOSED DATE *TERMS DURATION *ACTUAL PAYMENT *HISTORICAL ACCOUNT INFORMATION *ACCOUNT HISTORY.  If you have additional questions about this item, please contact: *SHELLPOINT MORTGAGE SERVIC, 55 Beattie Pl Ste 600, Greenville, SC 29601-2165 Phone: (484) 594-1038*

| SHELLPOINT MORTGAGE SERVIC | 55 Beattie Pl Ste 600 Greenville SC 29601-2165 : 4845941038 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Rev'd | Activity Designator | | Credit Classification |
| *5110 | 04/14/2021 | $302,929 | | 30 Years | Monthly | 31 | | | |

| Date of Last Reported Update | Balance | Amount Past Due | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj Del 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/22/2325 | $0 | $0 | | $0 | $0 | 10/31/2021 | | | | | | | 02/01/2024 |
| **Status** | **Type of Account** | | **Type of Loan** | | | **Whose Account** | | | **Portfolio Indicator** | | **Purchase Status** | | |
| Account closed; was over 120 Days Past Due | Mortgage | | USDA Real Estate Mortgage Loan | | | Individual Account | | | | | | | |

**ADDITIONAL INFORMATION:**

*Consumer Says Current Rate/Status Incorrect*

*Foreclosure*

*Real Estate Mortgage*

**Account History with Status Codes**

| | 02/2024 H | 01/2024 6 | 12/2023 6 | 09/2023 6 | 08/2023 5 | 07/2023 4 | 06/2023 3 | 05/2023 2 | 04/2023 1 |
|---|---|---|---|---|---|---|---|---|---|

**Historical Account Information**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 11/25 | $0 | $0 | | | $302,929 | | $0 | USDA Real Estate Mortgage Loan | |

**ADDITIONAL INFORMATION**

*Consumer Disputes - Reinvestigation In Process*

| | |
|---|---|
| 10/25 | No Data Available |
| 09/25 | No Data Available |
| 08/25 | No Data Available |
| 07/25 | No Data Available |
| 06/25 | No Data Available |
| 05/25 | No Data Available |

(End of Report)
000000141-DISC

5335531768-PY4-0fa9016a00000118-12222025



000012237 03206 0003-00C4 DECA00001222352086375 00 L 000000141

### Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 04/25 | No Data Available | | | | | | | | |
| 03/25 | No Data Available | | | | | | | | |
| 02/25 | No Data Available | | | | | | | | |
| 01/25 | No Data Available | | | | | | | | |
| 12/24 | No Data Available | | | | | | | | |
| 11/24 | No Data Available | | | | | | | | |
| 10/24 | No Data Available | | | | | | | | |
| 09/24 | No Data Available | | | | | | | | |
| 08/24 | No Data Available | | | | | | | | |
| 07/24 | No Data Available | | | | | | | | |
| 06/24 | No Data Available | | | | | | | | |
| 05/24 | No Data Available | | | | | | | | |
| 04/24 | No Data Available | | | | | | | | |
| 03/24 | No Data Available | | | | | | | | |
| 02/24 | $0 | | | | $302,929 | | | USDA Real Estate Mortgage Loan | |

ADDITIONAL INFORMATION
Foreclosure
Real Estate Mortgage
Fixed Rate

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 01/24 | $0 | $1,641 | | | $302,929 | | $0 | USDA Real Estate Mortgage Loan | |

ADDITIONAL INFORMATION
Foreclosure Process Started
Real Estate Mortgage
180 Days or More Past Due
Fixed Rate

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 12/23 | $0 | $1,641 | | | $302,929 | | $0 | USDA Real Estate Mortgage Loan | |

(End of Report)
000000141-DISC

Page 5 of 8

5335531766-PY4-0fa9016a000001f6-12222025

00001231/ 03208 0003-0004 DEC·A00001/22252208679 001 000000141

| Historical Account Information | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | | Activity Designator |
| ADDITIONAL INFORMATION | | | | | | | | | | |

ADDITIONAL INFORMATION
Foreclosure Process Started
Real Estate Mortgage
180 Days or More Past Due
Fixed Rate

(End of Report)
000000141-DISC

5335531766-PY4-0fa9016a000001f6-12222025



00001237 03208 0004-0004 DECA00001222325088?3 00 1 000001 41

## Notice to Consumers

You may request a description of the procedure used to determine the accuracy and completeness of the information, including the business name and address of the furnisher of information contacted, and if reasonably available the telephone number.

If the reinvestigation does not resolve your dispute, you have the right to add a statement to your credit file disputing the accuracy or completeness of the information; the statement should be brief and may be limited to not more than one hundred words (two hundred words for Maine residents) explaining the nature of your dispute.

If the reinvestigation results in the deletion of disputed information, or you submit a statement in accordance with the preceding paragraph, you have the right to request that we send your revised credit file to any company specifically designated by you that received your credit report in the past six months (twelve months for California, Colorado, Maryland, New Jersey and New York residents) for any purpose or in the past two years for employment purposes

Case No. 1:26-cv-468 | EX-146 | McALKICH–000123 | Packet 123 of 132

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-147

Equifax Credit File Page Showing Caliber Tradeline - October 5 2025

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

Prepared for:

## ROBERT MCALKICH III



Date: October 05, 2025
Confirmation # 5278564374

 ### CALIBER HOME LOANS INC. - Closed

13801 Wireless Way, Oklahoma City, OK 731342500 | (800) 401-6587
Account Number: *5110 | Owner: Individual Account
Loan/Account Type: USDA Real Estate Mortgage Loan | Status: Pays As Agreed

Date Reported: 11/05/2022 | Balance: $0
Credit Limit: - | High Credit: $302,929

| | | |
|---|---|---|
| Date Opened: 04/14/2021 | Date of 1st Delinquency: - | Terms Frequency: Monthly |
| Date of Last Activity: 02/01/2022 | Date Major Delinquency 1st Reported: - | Months Reviewed: 19 |
| Scheduled Payment Amount: - | Amount Past Due: - | Deferred Payment Start Date: - |
| Actual Payment Amount: - | Charge Off Amount: - | Balloon Payment Amount: - |
| Date of Last Payment: 02/01/2022 | Date Closed: 11/01/2022 | Balloon Payment Date: - |
| Term Duration: 30 Years | Activity Designator: Transfer/Sold | Narrative Code(s): 123, 127, 132 |

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2022 | ✓ | 30 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2021 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ✓ | Paid on Time | 30 | 30 Days Past Due | 60 | 60 Days Past Due | 90 | 90 Days Past Due | 120 | 120 Days Past Due |
| 150 | 150 Days Past Due | 180 | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | - | No Data Available |

| Narrative Code | Narrative Code Description |
|---|---|
| 123 | Account Transferred or Sold |
| 127 | Real Estate Mortgage |
| 132 | Fixed Rate |

### FINGERHUT/WEBBANK - Closed

6250 Ridgewood Rd, Saint Cloud, MN 563030820 | (320) 654-3800
Account Number: *1178 | Owner: Individual Account
Loan/Account Type: Charge Account | Status: Pays As Agreed

Date Reported: 09/22/2022 | Balance: $0
Credit Limit: $300 | High Credit: $0

| | | |
|---|---|---|
| Date Opened: 05/23/2021 | Date of 1st Delinquency: - | Terms Frequency: Monthly |
| Date of Last Activity: - | Date Major Delinquency 1st Reported: - | Months Reviewed: 15 |
| Scheduled Payment Amount: - | Amount Past Due: - | Deferred Payment Start Date: - |
| Actual Payment Amount: - | Charge Off Amount: - | Balloon Payment Amount: - |
| Date of Last Payment: - | Date Closed: 01/01/2022 | Balloon Payment Date: - |
| Term Duration: - | Activity Designator: Paid and Closed | Narrative Code(s): 158, 065 |

| Narrative Code | Narrative Code Description |
|---|---|
| 158 | Closed or Paid Account/Zero Balance |
| 065 | Account Closed By Credit Grantor |

Case No. 1:26-cv-468 | EX-147 | McALKICH–000125 | Packet 125 of 132

# EXHIBIT PLACEHOLDER / COVER PAGE

## EX-151

Experian Annual Credit Report - February 5 2026

This placeholder/cover page is part of the final Bates-numbered exhibit packet.

The exhibit pages immediately following this cover are the pages cited or relied on in the complaint packet.

Prepared For

## ROBERT MCALKICH

**Personal & Confidential**

**Date Generated**  Feb 5, 2026

**Report Number**  2711-8310-06

## At a Glance    18 Accounts    0 Public Records    2 Hard Inquiries

## Personal Information

11 Names        28 Addresses        4 Employers        5 Other Records

Because your personal information is reported by you, your creditors, and other sources, it's typical to see small variations in reported personal information, like names and addresses. For security reasons, many of these items can't be disputed online, but don't worry—they don't affect your credit score.

**Current:**

Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).

**Previous:**

Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).

Invalid date, Invalid date, Invalid date, Invalid date  Invalid date, Invalid date  Invalid date Invalid date, Invalid date, Invalid date, Invalid date, Invalid date, Invalid date. Invalid date Invalid date, Invalid date, Invalid date, Invalid date, Invalid date  Invalid date, Invalid date Invalid date, Invalid date  Invalid date  Invalid date  Invalid date, Invalid date, Invalid date, Invalid date, Invalid date, Invalid date  Invalid date, Invalid date, Invalid date, Invalid date

# NR/SMS/CAL

**POTENTIALLY NEGATIVE**

 ## Account Info

| | | | |
|---|---|---|---|
| Account Name | **NR/SMS/CAL** | Balance | $0 |
| Account Number | **971628XXXX** | Balance Updated | **03/22/2024** |
| Account Type | **Mortgage** | Recent Payment | - |
| Responsibility | **Individual** | Monthly Payment | - |
| Date Opened | **04/14/2021** | Original Balance | **$302,929** |
| Status | **Foreclosed.** | Highest Balance | - |
| Status Updated | **Feb 2024** | Terms | **30 Years** |
| | | On Record Until | **Jul 2028** |
| | | Mortgage Identification Number | ███ 997162851102 |

## Payment History

HFHS HENRY
FORD HEALTH S
for Legitimate
Business Need

**IL EMPLOYMENT SEC**
Inquired on 09/14/2025

120 W JEFFERSON ST, SPRINGFIELD IL 62702

**INTUIT INC**
Inquired on 11/17/2025

2700 COAST AVE, MOUNTAIN VIEW CA 94043

**JPMCB**
Inquired on 01/30/2026, 12/30/2025, 11/28/2025, 10/30/2025, 09/30/2025, 08/29/2025, 07/31/2025, 07/01/2025, 05 31/2025, 04/30/2025, 04/01/2025 and 03/01/2025

PO BOX 15298, WILMINGTON DE 19850
(800) 432-3117

**JPMCB CJ**
Inquired on 02 05/2026, 01/07/2026, 12 09/2025, 11/10/2025, 10/12/2025, 09 13/2025, 08/15/2025, 07 17/2025, 06/17/2025, 05/20/2025, 04 20/2025, 03 29/2025, 03 23/2025, 03/01/2025 and 02/21/2025

PO BOX 15298, WILMINGTON DE 19850
(888) 401-0550

**LN/DATALAB/ PROGRESSIVE**
Inquired on 04/24/2025, 03/27/2025 and 02/20/2025

**PORTFOLIO RECOV ASSOC**
Inquired on 07/08/2025 and 04/30/2025

**PROGRESSIVE INSURANCE**
Inquired on 05/03/2025

PO BOX 6807, CLEVELAND OH 44101

**RESURGENT CAPITAL SERVIC**
Inquired on 01/28/2026

55 BEATTIE PL STE 110,

6300 WILSON
MILLS RD,
MAYFIELD
VILLAGE OH
44143

CORPORATE
BLVD STE
100,
NORFOLK VA
23502
(844) 675-
3408

4737

SC 29601

**RNN/RESURG
ENT CAPITAL
SE**
Inquired on
01/08/2026

BEATTIE
PLACE, SUITE
400,
GREENVILLE
SC 29601

**RNN/RESURG
ENT CAPITAL
SE**
Inquired on
03/20/2025 a
nd 03/19/202
5

BEATTIE
PLACE, SUITE
400,
GREENVILLE
SC 29601

**TBOM/CCI**
Inquired on
06 05 2025

14600 NW
GREENBRIER
PKWY,
BEAVERTON
OR 97006
(503) 350-
4300

**THE
GOLDMAN
SACHS
GROUPI**
Inquired on
01/20/2026

200 WEST ST,
NEW YORK NY
10282

**VERIZON
WIRELESS**
Inquired on
04/29/2025

PO BOX
650051,
DALLAS TX
75265

**WEBBANK/AT
LS/IMAGINE**
Inquired on
06/13/2025

215 S STATE
ST,
SALT LAKE
CITY UT
84111

**XACTUS
AVANTUS**
Inquired on
07 07 2025

600 SAWMILL
RD,
WEST HAVEN
CT 06516

On behalf of
NEWREZ LLC

## Important Messages

### Medical Information

By law, we cannot disclose certain medical information (relating to physical, mental, or behavioral health or condition). Although we do not generally collect such information, it could appear in the name of a data furnisher (i.e., "Cancer Center") that reports your payment history to us. If so, those names display on your report, but on reports to others they display only as "MEDICAL PAYMENT DATA." Consumer statements included on your report at your request that contain medical information are disclosed to others.

### Public Records Information

If your report contains public records, the Public Records section includes items from courts that Experian may have obtained through a third party vendor, LexisNexis Risk Data Management Inc.  You may contact them at LexisNexis Consumer Center, PO Box 105615, Atlanta, GA 30348-5108, or visit https://experianconsumers.lexisnexis.com .

## Contact Experian

### Online

Visit Experian.com/dispute to dispute any inaccurate information, or click the dispute link next to the item. For FAQs and online access to your Experian Credit Report, Fraud Alerts, and Security Freezes, visit Experian.com/help

### Phone

**Monday - Friday**
9am to 5pm
(855) 414-6047

### Mail

**Experian**
PO Box 9701
Allen, TX 75013

## Know Your Rights

# Fair Credit Reporting Act (FCRA)

*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.*

A Summary of Your Rights Under the Fair Credit Reporting Act

sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.**

**You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment — or to take another adverse action against you — must tell you, and must give you the name, address, and phone number of the agency that provided the information.

**You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:

- a person has taken adverse action against you because of information in your credit report;
- you are the victim of identity theft and place a fraud alert in your file;
- your file contains inaccurate information as a result of fraud;
- you are on public assistance;
- you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

**You have the right to ask for a credit score.** Credit scores are numerical summaries of your creditworthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

**You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

**Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

**Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

**Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need — usually to consider an application with a creditor